Commonwealth *v.* Leamer, Appellant.

Argued January 17, 1972. Before JONES, C. J., EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

*T. Dean Lower,* for appellant.

*Amos Davis,* District Attorney, for Commonwealth, appellee.

OPINION BY MR. JUSTICE POMEROY, October 4, 1972:

Appellant was convicted in 1958 following a jury trial of the 1955 first degree murder of his 92-year-old grandfather, Samuel Jacob Leamer, and sentence was fixed at life imprisonment. After the jury returned its verdict, appellant's counsel made an oral motion for a new trial, which was withdrawn immediately prior to sentencing. In 1970, we reversed the dismissal of appellant's 1968 Post Conviction Hearing Act[1] petition and held, based upon our decision in *Commonwealth v. Littlejohn,* 433 Pa. 336, 250 A. 2d 811 (1969), that Leamer's waiver of the right to appeal, inherent in his withdrawal of the motion for a new trial, had not been voluntary because induced by a fear that on a retrial the death sentence might be imposed. *Commonwealth v. Leamer,* 440 Pa. 37, 269 A. 2d 708 (1970). Post-trial motions were subsequently filed *nunc pro tunc* in the Court of Common Pleas of Blair County and were denied by a court *en banc* on September 17, 1971. This appeal followed.[2]

---

[1] Act of January 25, 1966, P. L. (1965) 1580, 19 P.S. 1180-1 et seq.

[2] We note that the trail leading to this appeal has been well-marked by one earlier jury trial, numerous habeas corpus and post-

The Commonwealth's case of first degree murder against appellant consisted primarily of a confession, the voluntariness of which is not here challenged, and corroborating evidence discovered pursuant to this statement. According to his confession, appellant, then 30 years of age, went to the home of his grandfather on the evening of September 2, 1955, with the avowed purpose of committing a robbery. Finding the victim at home, appellant lured him outside the house, ostensibly to look at an albino deer, and then fatally struck him over the head with a piece of pipe. A small amount of money and a flashlight were stolen from the house, and a watch was taken from the body of the deceased. Appellant then transported the body to and deposited it in a nearby water-filled quarry hole.

At trial appellant took the stand to refute the confession. He stated that he had gone to the elder Leamer's house to borrow five dollars to help pay the rent; that when his grandfather made disparaging remarks about appellant's wife and suggested that he, the

conviction petitions, and several other appeals. At his first trial in 1956 appellant pleaded guilty, was adjudged guilty of first degree murder, and was sentenced to death. On appeal, we affirmed. (386 Pa. 485, 126 A. 2d 409 (1956)). A 1957 habeas corpus petition in the Court of Common Pleas of Blair County resulted in reversal of this 1956 conviction after it was determined that appellant had not been competent to stand trial. No appeal was taken from the second trial in 1958, but subsequent habeas corpus petitions were dismissed by the Court of Common Pleas of Blair County in 1963; by the United States Supreme Court in 1963; by the Pennsylvania Supreme Court in 1963; by the United States District Court for the Middle District of Pennsylvania in 1964 (No. 532 Habeas Corpus); and by the Blair County Court of Common Pleas in 1967 (affirmed by the Pennsylvania Supreme Court at 430 Pa. 659, 243 A. 2d 123 (1968)). In 1968, appellant's PCHA petition was denied by the Blair County Common Pleas Court, this latter order resulting in our 1970 reversal and the filing *nunc pro tunc* of the motion for new trial which is the subject matter of this appeal.

grandfather, might be better able to satisfy her amorous proclivities, a scuffle ensued in which the deceased accidentally struck his head on the stove; frightened, appellant then removed the body to the quarry hole.

Of the more than thirty alleged errors asserted in his new trial motion, appellant now presses only seven. For reasons which follow, we conclude that all are without merit and therefore affirm the 1958 judgment of sentence.

(1) Appellant first argues that he was unconstitutionally denied the right to counsel at his preliminary hearing in 1955. Although the United States Supreme Court held in 1970 that a preliminary hearing is a critical stage in a criminal proceeding, requiring the presence of counsel unless knowingly waived, *Coleman v. Alabama,* 399 U.S. 1, 26 L. Ed. 2d 387 (1970), that decision is not retroactive. *Adams v. Illinois,* 405 U.S. 278, 31 L. Ed. 2d 202 (1972). *Commonwealth v. Thomas,* 440 Pa. 213, 270 A. 2d 211 (1970) ; *Commonwealth v. James,* 440 Pa. 205, 269 A. 2d 898 (1970). We need not consider, therefore, whether appellant was in fact denied counsel at the preliminary hearing.

(2) Appellant next complains that he was prejudiced by the refusal of the trial court to allow defense counsel to cross-examine a Commonwealth witness as to whether the defendant had been advised of his constitutional rights before making his confession. The Commonwealth contended, and the trial court agreed, that in 1955, prior to the Supreme Court's decisions in *Escobedo v. Illinois,* 378 U.S. 478, 12 L. Ed. 2d 977 (1964) and *Miranda v. Arizona,* 384 U.S. 436, 16 L. Ed. 2d 694 (1966), no such rights were known to exist. The practice in this jurisdiction, however, was to advise defendants at least of their rights to remain silent and that any statements made could be used against them. These warnings were not considered to be constitution-

ally mandated, but desirable practice and a useful precaution if the Commonwealth were successfully to rebut a subsequent challenge to the confession as involuntary. *Commonwealth v. Negri*, 414 Pa. 21, 198 A. 2d 595 (1964) ; *Commonwealth v. Dilsworth*, 289 Pa. 498, 137 Atl. 683 (1927). As in the above two cases, so here, no contention has been made that the confession was in fact involuntary; thus a failure of the police officer to admonish the accused before taking his statement, if this in fact occurred, would not render the statement inadmissible. *Commonwealth v. Negri, supra*, at 30. The court did not err in not permitting the requested cross-examination.

(3) The third assignment of error is that the trial judge did not maintain a fair and impartial attitude in his conduct of the trial. In a trial spanning seven days and involving the testimony of over two dozen witnesses, it is only natural that a defendant should be dissatisfied with some of the court's rulings. We have examined the trial transcript in its entirety, however, and cannot agree with appellant that the trial judge conducted the trial or exercised his discretion in a manner which was in any way hostile to appellant or prejudicial of his rights to a fair trial.

(4) Appellant's next contention is that the trial judge improperly allowed the introduction of his tape-recorded confession after the same statement had already been introduced in written form. When properly identified as true and correct reproductions, and when the voices are properly identified, such tape recordings are admissible. *Commonwealth v. Lopinson*, 427 Pa. 284, 308, 234 A. 2d 552 (1967) ; *Commonwealth v. Bolish*, 381 Pa. 500, 524, 113 A. 2d 464 (1955). Appellant argues, however, that the taped evidence here was merely cumulative and thus should have been excluded. Under all the circumstances of this case, we

do not find any abuse of discretion on the part of the trial judge in permitting the tape recording to be introduced.

(5) Conviction of murder in the first degree is challenged on the ground that, aside from appellant's confession, there was insufficient evidence to support this degree of guilt. The law is well settled that ". . . an extrajudicial admission or confession of one accused of crime cannot be received in evidence unless and until the corpus delicti of the crime has first been established by independent proof, and that failure to comply with this prerequisite will exclude the admission or confession . . . [W]henever . . . the Commonwealth, in a homicide case, has established that the person for whose death the prosecution was instituted is in fact dead and that the death occurred under circumstances indicating that it was criminally caused *by someone*, the rule is satisfied and admissions or confessions may then always be received as proof of the identity of the guilty agent; Commonwealth v. Gardner, 282 Pa. 458, 463; Commonwealth v. Pugilese, 276 Pa. 235, 238." *Commonwealth v. Turza*, 340 Pa. 128, 133-34, 16 A. 2d 401 (1940). See also *Commonwealth v. Leslie*, 424 Pa. 331, 227 A. 2d 900 (1967) ; *Commonwealth v. Ross*, 403 Pa. 358, 169 A. 2d 780 (1961), *cert. denied*, 368 U.S. 904, 7 L. Ed. 2d 98 (1961).

Appellant concedes that discovery of the deceased's body weighted with rocks so that it would sink to the bottom of the quarry pond, together with medical testimony establishing that death resulted from foul play, satisfies the above two requirements. He insists, however, that where the Commonwealth seeks to prove *first degree murder*, there also must be evidence, independent of the confession, which shows premeditation or that death occurred in perpetration of a felony. We think that this argument misconceives the underlying reason

for requiring proof of the corpus delicti in the first place. "The grounds on which the rule [requiring proof of the corpus delicti] rests are the hasty and unguarded character which is often attached to confessions and admissions and the consequent danger of a conviction where no crime has in fact been committed; . . ." *Turza, supra,* at 134. Where, as here, proof of the commission of the crime is independently established, the danger of innocent convictions is obviated and a confession is admissible to show the degree of the crime as well as the identity of its perpetrator. In addition, we note that some independent evidence of commission of a burglary was supplied by recovery of the grandfather's watch and evidence of jimmy marks around the door and windows of the deceased's house.

(6) Appellant's sixth assignment of error, summarily rejected by the trial court, is that after the original panel of jurors had been exhausted on voir dire, the sheriff did not follow the statutorily prescribed procedure for summoning additional jurors.[3] The Act of April 14, 1834, P. L. 333, §144, 17 P.S. 1146, in effect at the time of trial, provided as follows: "If a sufficient number of the persons summoned and returned as aforesaid shall not appear as required, or if,

---

[3] We note that this same contention (also the seventh, which follows in the text) was raised, fully aired, and rejected in appellant's counselled 1964 habeas corpus petition in the District Court of the United States for the Middle District of Pennsylvania, No. 532 Habeas Corpus, prior to the effective date of the Post Conviction Hearing Act, *supra,* note 1. No appeal appears to have been taken from this ruling, and there is no way of knowing on the record before us whether the right to appeal was knowingly waived. Section 4 of the Post Conviction Hearing Act is thus not a bar to presentation of the sixth and seventh points raised on this appeal. *Commonwealth v. Cannon,* 442 Pa. 339, 275 A. 2d 293 (1971). Cf. *Commonwealth v. Faison,* 437 Pa. 432, 264 A. 2d 394 (1970), where the intervening collateral proceedings were after the effective date of the Post Conviction Hearing Act.

by reason of challenges or otherwise, there shall not be a sufficient number of jurors present, competent for the trial of any cause which shall be called for trial, the sheriff or coroner, or, if the case require it, two citizens, to be appointed by the court for that purpose, shall, upon the order of the court, immediately summon and return from the bystanders, or from the county at large, so many qualified and competent persons as shall be necessary to fill up the jury for the trial of such cause."

Appellant represented to the trial court that instead of choosing from bystanders or the citizenry of the county at large, the sheriff solicited additional jurors by telephone, thereby weighting the panel in favor of his own "law and order" and "anti-crime" sentiments. There is nothing in the record, however, as to the manner in which the additional jurors were in fact called, and we cannot say that the lower court was in error in directing the trial to proceed with the jury as selected. Accordingly, we need not decide whether the alleged use of the telephone was improper under the Act of 1834.

(7) Appellant's final contention is that the court erred in allowing the Commonwealth to introduce his record of a prior burglary conviction either to assist the jury in setting the penalty at death or life imprisonment under the then prevailing "Parker Rule" in the event they returned a verdict of first degree murder, see *Commonwealth v. Parker*, 294 Pa. 144, 143 Atl. 904 (1928), or for impeachment purposes.[4]  In *Common-*

---

[4] Appellant's record was introduced before he took the stand and put his own character into issue. Appellant admits that had the order of proof been reversed, the admissibility of the prior record could not be challenged. He contends, however, that the Commonwealth had no way of knowing what the strategy of the defense would be, and in fact forced him to broach the subject of good character.

*wealth v. Chapasco*, 436 Pa. 143, 258 A. 2d 638 (1969), we restated the three factors to be considered in determining when the introduction of a defendant's prior criminal record under the Parker Rule was so prejudicial as to amount to a denial of due process. Those factors are: (1) the number and nature of the prior crimes and their relationship to the murder charged; (2) whether the Commonwealth actively sought the death penalty; and (3) whether there was a substantial question of guilt to be resolved at trial. We are satisfied, reviewing the record in light of these factors, that the introduction of the burglary conviction was proper under the Parker Rule as bearing on the penalty to be imposed should the jury find appellant guilty of murder in the first degree; there was no prejudice which could be said to amount to a denial of due process. Only one prior conviction was put in evidence, and that of a crime of a different nature; it was not likely to influence the jury on the basic question of guilt. The death penalty was actively sought by the Commonwealth (appellant had in fact received it on his first trial). Finally, evidence of guilt, considering appellant's confession, was clearly sufficient to convict without any resort to a prior criminal record. Moreover, the court properly charged on the purpose and effect of the prior record, and no exception was taken thereto.

In light of the above, we conclude that introduction of appellant's prior record was proper under the Parker Rule, and we need not decide therefore its admissibility for impeachment purposes.

Judgment of sentence affirmed.

———

DISSENTING OPINION BY MR. JUSTICE MANDERINO:

A defendant exercising his *constitutionally guaranteed right of appeal* is entitled to a judgment on the

merits according to constitutional rights as known and understood at the time his constitutionally guaranteed appeal is being decided.

The non-retroactive doctrine which is sometimes used—and sometimes not—to judge the merits of constitutional questions in constitutionally mandated appeals is built upon a quicksand of logic. For courts to speak of *old* and *new* constitutional rights based on calendar cut-off dates, established by judicial decrees, involves the usurpation of authority reserved to the people—they alone can amend and, thus, alter constitutional rights effective on a day certain.

Courts, in exercising judicial authority, perpetually receive new insight from the ever increasing knowledge of the arts and sciences. These new insights result in new applications of unchanging constitutional principles to age-old and well-known situations. The arts and sciences continually teach us more about ourselves as members of society and our relationships to each other. In deciding the justice of any man's cause, a new awareness of constitutional injustice should not be arbitrarily ignored because of the calendar. However, because rational men may provide for finality in the appellate process, a constitutionally erroneous result occurring in that process may be insulated from collateral attack unless legislative enactments otherwise provide. See §3(c)(12) of the Post Conviction Hearing Act, Act of January 25, 1966, P. L. (1965) 1580, §3, 19 P.S. 1180-3(c)(12).

I dissent. The non-retroactive doctrine should not have barred some of the constitutional claims presented by the defendant.