## Commonwealth *v.* McIntyre, Appellant.

Argued April 24, 1972. Before JONES, C. J., EAGEN, O'BRIEN, ROBERTS, POMEROY and MANDERINO, JJ.

*Marilyn J. Gelb,* for appellant.

*William P. Boland,* Assistant District Attorney, with him *Milton M. Stein,* Assistant District Attorney, *James D. Crawford,* Deputy District Attorney, *Richard A. Sprague,* First Assistant District Attorney, and *Arlen Specter,* District Attorney, for Commonwealth, appellee.

OPINION BY MR. JUSTICE MANDERINO, March 16, 1973:

The appellant, John Joseph McIntyre, was convicted on February 27, 1970, following a jury trial, of first degree murder, aggravated robbery and burglary. Appellant received a life sentence for the first degree murder conviction and concurrent sentences of ten to twenty years for the aggravated robbery and burglary conviction. Appellant challenges (1) the sufficiency of the evidence, (2) the use of his confession, (3) the trial judge's failure to rule on the admissibility of appellant's confession and (4) the charge to the jury concerning the confession. The recital of facts that follow are taken from the record and could reasonably have been found by the jury.

During the morning of October 17, 1968, appellant participated, along with one, John Seeley, and one, Adolph Schwartz, in the burglary-robbery of the residence of Frank and Anna Washick, located at 9158 Verree Road in Philadelphia. Appellant's accomplices

entered the residence. Appellant stayed outside the home during the robbery. The Washicks along with their daughter, Mary Ann Washick, were at home. During the robbery Anna Washick was able to call the police from the den-library in the home without being detected. While the robbery was still in progress, two police cars pulled into the driveway of the Washick residence. The concern and movements of the robbers in the residence after seeing the cars in the driveway gave the Washicks the opportunity to go into the laundry room of the home and admit two of the arriving police officers. The other officers remained outside the home. One of the officers who had entered the home went through the door connecting the laundry room to the kitchen; the other officer remained in the laundry room with the Washick family. Immediately, two shots were heard and the officer who had gone into the kitchen crawled back into the laundry room area. His wounds were fatal. Approximately forty-five seconds later, additional shots were fired by officers who were outside the home. They were shooting at one of the robbers attempting to escape through the front door. This robber, John Seeley, was shot and killed by the police. Additional officers who had arrived in a third car after the original shooting, fired at one of the robbers who was seen looking out of the second-floor window.

Under the Commonwealth's theory, appellant was guilty of murder because one of his accomplices shot and killed the officer who entered the kitchen from the laundry room. Appellant first claims that the officer could have been shot and killed by someone other than one of his accomplices. The evidence viewed most favorable to the Commonwealth established that at the time the officer was shot in the kitchen, no one else was in the Washick home except appellant's two accomplices, the Washicks and the officer-partner of the slain officer. The Washicks and the officer-partner were

together in the laundry room. A strong inference was certainly permissible that the officer who was shot immediately after he entered the kitchen was shot by one of the appellant's accomplices. The evidence strongly indicated that it was appellant's accomplice, Seeley, who shot the officer in the kitchen. Seeley had a .38 caliber pistol and the other accomplice in the home had a .25 caliber pistol. Two shots had been fired from Seeley's .38 caliber pistol and two .38 caliber bullets were found lodged in the kitchen walls. A trace of blood was found on one of the bullets. There was no evidence that any policeman, at any time, fired a .38 caliber pistol into the kitchen. All of the shots fired by the police were at either an upstairs window or at the front door.

In spite of the above evidence, appellant points to certain weaknesses in the Commonwealth's case. None of these weaknesses were justification for taking away from the jury the issue as to whether one of the accomplices shot the officer. Appellant claims (1) there was no eyewitness in the kitchen, (2) the blood on one of the bullets found in the kitchen was not identified as that of the slain officer, (3) that it could not be determined from a neutron activation analysis whether accomplice Seeley had personally fired his gun, (4) that there was no conclusive ballistic evidence that the officer was killed by bullets from Seeley's .38 caliber pistol, (5) that there was no conclusive ballistic evidence that the two .38 caliber bullets found in the kitchen came from Seeley's gun and (6) that there was a discrepancy in the physical evidence in that the blood-stained bullet removed from the kitchen cabinet was found at a height of four feet, five and one-half inches from the floor, but the bullet that killed the officer entered his body on a horizontal plane about five feet, one inch from the floor if the officer were standing in an erect position.

The weaknesses in the evidence pointed out by the appellant, however, are not inconsistent with the other

evidence that strongly indicates that the officer was shot in the kitchen by one of the accomplices. The weaknesses only indicate that the Commonwealth was not able to provide an air-tight case with all "T's" crossed. This is not unusual when there is no eye-witness.

As stated in *Commonwealth v. Petrisko,* 442 Pa. 575, 580, 275 A. 2d 46, 49 (1971): "[I]t is not necessary that each piece of evidence be linked to the defendant beyond a reasonable doubt. It is only necessary that each piece of evidence include the defendant in the group who could be linked while excluding others, and that the *combination* of evidence link the defendant to the crime beyond a reasonable doubt." (Emphasis supplied.)

It was within the province of the jury to accept or reject the evidence produced by the Commonwealth. After a review of all the evidence, we agree with the lower court's ruling that it is sufficient to sustain the jury's finding that appellant's accomplice shot and killed the officer.

Appellant's second challenge concerns the use of his confession. Specifically, the appellant raises the following three claims; (a) that his request for counsel was denied or ignored; (b) that he was not advised that he was charged with murder and (c) that his confession was the product of brutality.

Appellant claims that he had the card of Thomas Gibson, an attorney, in his wallet and his request that Gibson be called was denied. The Commonwealth's testimony was that the appellant was informed of his constitutional rights, including his right to counsel and that the appellant waived these rights. The signed statement by the appellant also contains a waiver of these rights. The question was one of credibility. The suppression judge who had the opportunity to observe the witnesses, resolved the question in favor of the

Commonwealth. We cannot say that the ruling was an abuse of discretion.

Appellant next claims that although he was informed of the burglary charge before his confession, he was not told of the murder charge. In *Commonwealth v. Boykin*, 450 Pa. 25, 298 A. 2d 258 (1972), we held that the defendant who was told that a death was being investigated had been sufficiently informed about the crime and there was no need for more specificity concerning the legal charges of murder or manslaughter. We said that a defendant is sufficiently alerted to the possibility of involvement in a criminal homicide case if the defendant knows that the victim's death is under investigation.

In the present case, the following pre-confession colloquy occurred between the appellant and the interrogating officer immediately after appellant was informed of his constitutional rights: "Q. Do you know why you have been arrested? A. Yes, for the burglary where my brother-in-law [John Seeley] was killed. Q. John, I want to inform you at this time that Policeman William Lackman, #2762, was pronounced dead at 11 a.m. 10/17/68, inside the Nazareth Hospital, by Paul Casey, from a gunshot wound, and John Seeley was pronounced dead at 11:30 a.m. at 9158 Verree Road [the scene of the burglary and robbery] by Dr. Joseph Campbell, from a gunshot wound. Do you understand this? A. Yes."

The above colloquy makes it clear that the defendant was told that the police officer's death was involved in their investigation. It was not necessary that the police specifically refer to "murder charges". The appellant was sufficiently alerted and could hardly have thought that the police were interested in the burglary but not the death of the policeman from a gunshot wound. Appellant's claim that the police tricked

or deceived him into confessing is not established by the record.

Next appellant claims that his confession was the product of police brutality. This issue was resolved against the appellant below. The record contains sufficient evidence to sustain the Commonwealth's position. The lower court accurately spoke to this issue as follows: "Defendant did testify that he had been beaten, and that that was why he had confessed. However, the police officers accused denied that they had beaten defendant. The officers' testimony was corroborated by a Deputy District Attorney, who had seen defendant during the interrogation. Also admitted in evidence were: photographs of defendant, some taken during the interrogation, and some at the prison; testimony by an attorney who had been engaged by defendant's brother, with respect to defendant's appearance as of about 10 days after defendant had confessed; and testimony with respect to certain medical reports from the prison. The upshot of this varied evidence was an issue that the jury could have resolved in several ways, including a finding that defendant had suffered no injury while in police custody; and the issue was so argued to the jury."

Appellant's third claim is that the trial judge erred in not ruling on the admissibility of the confession. Since the suppression hearing judge had ruled that the confession would be admissible, the trial judge properly did not reconsider the matter. Pa. R. Crim. P. 323(j) provides that the determination of admissibility at the suppression hearing is "final, conclusive and binding at trial, except upon a showing of evidence which was theretofore unavailable." The appellant does not claim that any new evidence was introduced at the trial, but argues that the trial judge was not bound by Pa. R. Crim. P. 323 (j) in the present case. The appellant contends that as a matter of constitutional law

50

"the trial judge in the face of evidence at trial that appellant's injuries while in police custody, unexplained by the Commonwealth, should have reconsidered the voluntariness of the statement in light of the trial record." In support of this contention, the appellant cites the following cases: *Miranda v. Arizona,* 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602 (1966) ; *People v. Davis,* 35 Ill. 2d 202, 220 N.E. 2d 222 (1966) ; *People v. Cerullo,* 18 N.Y. 2d 839, 275 N.Y.S. 2d 845, 222 N.E. 2d 605 (1966) ; *People v. Valletutti,* 297 N.Y. 226, 78 N.E. 2d 485 (1948) ; and *People v. Barbato,* 254 N.Y. 170, 172 N.E. 458 (1930). As the lower court correctly stated, however, the above cases are not applicable in this case. The thrust of the above cases is that undisputed evidence that a defendant was injured while in police custody and prior to his confession may render the confession inadmissible if the injuries remain unexplained by the prosecution's evidence. In this case, the prosecution denied that any injuries occurred to the appellant prior to the confession and presented evidence to that effect. The issue was in dispute and was properly submitted to the jury.

Appellant's fourth claim of error concerns the court's charge concerning the appellant's confession. Specifically, the appellant argues that the trial judge failed to charge that the Commonwealth had the burden of proving the voluntariness of the confession beyond a reasonable doubt. Since the appellant failed to make a timely objection to the charge, the alleged error need not be considered. Under our holding in *Commonwealth v. Williams,* 443 Pa. 85, 277 A. 2d 781 (1971), the issue has been waived. Nonetheless, under *Commonwealth ex rel. Butler v. Rundle,* 429 Pa. 141, 239 A. 2d 426 (1968), the voluntariness of a confession need not be established beyond a reasonable doubt. Appellant argues, however, that the preponderance of evidence test in *Butler* should apply only at pretrial suppression

hearings, and not at trial. *Butler* did not make such a distinction. In *Butler*, we said: "The rule is that the prosecution has the burden of proving every essential *element* of the crime beyond a reasonable doubt [citations omitted]. These essential elements are such things as intent and corpus delicti. The voluntariness of a confession is not one of these elements, for it should be obvious that a confession itself is not an essential element of a conviction. It cannot be argued that every *fact* found by a jury must be found beyond a reasonable doubt. A number of facts, each found by a preponderance can add up to guilt beyond a reasonable doubt."

The lower court did not err in not charging that the voluntariness of the confession had to be established beyond a reasonable doubt.

Judgment affirmed.

Mr. Justice EAGEN concurs in the result.

Mr. Justice NIX took no part in the consideration or decision of this case.