Commonwealth *v.* Weeden and Reed, Appellants.

438

[redacted]

Argued March 14, 1973. Before Jones, C. J., Eagen, O'Brien, Roberts, Pomeroy, Nix and Manderino, JJ.

[redacted]

*John J. Dean,* Assistant Defender, with him *John R. Cook,* Assistant Defender, and *George H. Ross,* Defender, for appellants.

*R. L. Campbell,* Assistant District Attorney, with him *Robert L. Eberhardt,* Assistant District Attorney, and *Robert W. Duggan,* District Attorney, for Commonwealth, appellee.

Opinion by Mr. Justice Manderino, July 1, 1974:

The appellants, Angelo Weeden and Major Reed, were convicted of murder in the first degree in a joint

[redacted]

trial by jury. Post-verdict motions were denied and the appellants were sentenced to life imprisonment. This appeal followed. Four issues which are raised by both appellants will be discussed in the first part of this opinion followed by a consideration of three other issues raised only by the appellant Weeden.

The prosecution's evidence established that the two appellants and a third man, Ronald Williams, shot and killed one James Montgomery, during a robbery of the victim's apartment in the City of Pittsburgh on August 21, 1971. The third man, Ronald Williams, was tried separately. *See Commonwealth v. Williams,* 454 Pa. 261, 311 A.2d 920 (1973).

The victim's wife, who resided at the apartment with the victim and their two children, testified that during the afternoon of August 21, 1971, two men, the appellants, came to the apartment to see her husband, but departed when told that he was not at home. Later that evening, the victim's wife, while resting in the bedroom, heard voices in the apartment. She went from the bedroom into the kitchen and saw the appellants in the company of a third man, Ronald Williams, standing in front of her husband who was bent over the kitchen table with his hands stretched out. Ronald Williams was holding a shotgun. She heard one of the appellants say "If he moves, blow his brains out." She testified that "all of a sudden the blast went off" and she immediately ran to the phone to call the police. She did not see what happened after the shooting and did not see the men leave the apartment. The police arrived shortly thereafter. The victim's body was found with his right pants pocket pulled out and loose change, mingled with blood, was found near the pocket. Marijuana was found in the victim's dresser in the apartment.

The victim's wife knew the appellant Weeden, since she had gone to high school with Weeden's sister and had previously seen him in the area. She identified the

appellant Reed from photographs, although she did not know his name. The next day, the appellant Weeden learned that he was wanted by the police and voluntarily turned himself in. One day later, the appellant Reed was arrested at the home of his fiancee. Pursuant to a search warrant, the fiancee's home was searched and a brown bag containing marijuana was found. This marijuana was later identified during the trial as belonging to the same lot as that found in the victim's apartment.

The appellants gave separate statements to the police in which they said that both their afternoon and evening trips to the victim's apartment were for the purpose of purchasing marijuana. They denied any robbery plan. They claimed that the shooting of the victim by Ronald Williams during the evening visit was unexpected. During the trial, appellant Reed testified but appellant Weeden did not. Reed again said that no robbery was planned and the shooting by the third man, Ronald Williams, was a suprise to him. Prior to trial, applications by both appellants to suppress evidence were denied. The trial court refused to suppress the statements given to the police by the appellants. Appellant Reed was permitted to challenge the use of the marijuana found in his fiancee's home as evidence, but relief was denied. Appellant Weeden, however, was denied the right to challenge the use of the marijuana as evidence. The trial court held that appellant Weeden had no standing to challenge that evidence.

The appellants first claim that they "did not knowingly and intelligently waive their rights when they gave a statement to the police, because they didn't understand the consequences of their act." The appellants admit that the *Miranda* warnings were read to them and understood by them. They contend, however, that the waiver of their constitutional rights was ineffective because they did not realize, and the police did not explain, that a participant in a robbery, during which a

killing occurs, may be guilty of murder, even though that participant did not personally kill the victim. The appellants contend that *Miranda v. Arizona,* 348 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602 (1966), entitled the appellants to an explanation of the felony murder rule. We do not agree.

Before the appellants made any inculpatory statements to the police, they were told that they were being *charged with the murder and the robbery of James Montgomery. Commonwealth v. McIntyre,* 451 Pa. 42, 301 A.2d 832 (1973), also involved a defendant who had participated in a robbery during which one of the defendant's accomplices shot and killed a police officer. The claim was made that the police did not specifically refer to a murder during their interrogation and, thus, the defendant's confession was invalid. *McIntyre* rejected that claim and held that the defendant was adequately informed because the defendant knew that the police were investigating the death of a policeman in connection with a robbery. *Commonwealth v. Boykin,* 450 Pa. 25, 298 A.2d 258 (1972), held that a defendant who was told that a death was being investigated had been sufficiently informed about the crime and there was no need for more specificity concerning the legal charges of murder or manslaughter. "[A] defendant is sufficiently alerted to the possibility of involvement in a criminal homicide case if the defendant knows that the victim's death is under investigation." *Commonwealth v. McIntyre,* 451 Pa. 42, 48, 301 A.2d 832, 835 (1973). Appellant Weeden was 20 years old and had completed, with a "C" average, his junior year of high school. Appellant Reed was 19 years old and had finished one and a half years of college. They were both given the opportunity and did speak with their parents before statements were obtained from them; they had been informed of their constitutional right to silence, their constitutional right to have their attorney

present, and they were given the other warnings required by *Miranda*. They had been informed that they were *charged with murder and robbery*. Under these circumstances, we conclude that the appellants knowingly, intelligently and voluntarily waived their rights before they gave their statements to the police.

The second argument raised is that the trial court erred in allowing only twenty peremptory challenges to the defense, rather than twenty peremptory challenges to each appellant. The appellants rely on the Act of March 6, 1901, P. L. 16, §1, *as amended*, 19 P.S. §811, which states: "[I]n the trial of misdemeanors and felonies, . . . the Commonwealth and defendant shall each be entitled to twenty peremptory challenges . . . ." The above section, however, is limited by the Act of March 31, 1860, P. L. 427, §40, 19 P.S. §785, which states: "In all cases in which two or more persons are jointly indicted for any offense, it shall be in the discretion of the court to try them jointly or severally, except that in cases of felonious homicide, the parties charged shall have the right to demand separate trials; and *in all cases of joint trials, the accused shall have the right to the same number of peremptory challenges to which either would be entitled if separately tried, and no more.*" (Emphasis added.) The appellants argue that section 40 of the Act of March 31, 1860, is not controlling because defendants charged with felonious homicide "have the right to demand separate trials." Act of March 31, 1860, P. L. 427, §40, 19 P.S. §785. Since they had the right to be tried separately, appellants argue that they should not lose the twenty peremptory challenges each would have had in separate trials. Their agreement to be tried jointly should not, according to the appellants, affect the number of peremptory challenges. We cannot agree. Section 40 of the Act of March 31, 1860, specifically covers "all cases of joint trials." Moreover, that part of section 40 which states

that *"in cases of felonious homicide, the parties shall have the right to demand separate trials"* is immediately followed by the language *"and in all cases of joint trials,* the accused shall have the right to the same number of peremptory challenges to which either would be entitled if separately tried, and no more."  The only reasonable interpretation is that if defendants agree to be tried jointly, even in cases of felonious homicide, they are entitled only to that number of peremptory challenges which *either would have had* in separate trials. We conclude that the trial court did not err in restricting the defense to twenty peremptory challenges.

The third argument raised by the appellants is that the trial court erred in granting the prosecution's challenge for cause of a juror.  The excused juror voiced "conscientious scruples against the imposition of life imprisonment . . ." and stated that she could not impose a sentence of life imprisonment no matter what the evidence or the law.  The prosecution asked the juror "Is it your position that no matter what the law in the case would be as the judge instructs you, no matter what the evidence would be, that you could not follow that law in that evidence and return a finding which would result in life imprisonment?"  The juror answered "I couldn't because it would worry me."  The appellants rely on *Witherspoon v. Illinois,* 391 U.S. 510, 20 L. Ed. 2d 776, 88 S. Ct. 1770 (1968), which held "that a sentence of death cannot be carried out if the jury that imposed or recommended it was chosen by excluding the venireman for cause simply because they voiced general objections to the death penalty or expressed conscientious or religious scruples against its infliction." *Id.* at 522, 20 L. Ed. 2d at 784-85, 88 S. Ct. at 1777. *Witherspoon,* however, noted that it was not error to exclude for cause "those who made unmistakably clear (1) that they would *automatically* vote against the imposition of capital punishment without regard to any evidence

that might be developed at the trial of the case before them, or (2) that their attitude towards the death penalty would prevent them from making an impartial decision as to the defendant's *guilt.*" *Id.* at 522 n.21, 20 L. Ed. 2d at 785 n.21, 88 S. Ct. at 1777 n.21. Even accepting the appellants' argument that the *Witherspoon* rationale should apply to jurors who express conscientious or religious scruples or general objections to the penalty of life imprisonment, we find that the juror excluded for cause in this case was excluded properly. The juror did not voice only general objections or religious or conscientious scruples against the imposition of life imprisonment. The juror said she could not return a finding that would result in life imprisonment. She made it clear that she would *automatically* vote against any such finding. Under these circumstances, the trial court did not err in granting the prosecution's challenge for cause of this juror.

The fourth argument raised by the appellants is that the trial court erred in admitting into evidence the statements of the appellants since the necessary proof of the corpus delicti was not established. *Commonwealth v. Palmer,* 448 Pa. 282, 292 A.2d 921 (1972). The appellants argue that when the crime involved is felony murder, proof of the corpus delicti requires not only proof of a homicide but also proof of the felony involved. Appellants contend that there was no proof of the corpus delicti of a robbery. In *Commonwealth v. Leamer,* 449 Pa. 76, 295 A.2d 272 (1972), we rejected the contention made by the appellants. In *Leamer,* we held that the corpus delicti of a felony murder is established in the same way that a corpus delicti for any homicide case is established. It is not necessary to prove, independent of the confession, that the death occurred during a felony. In *Leamer,* we said: "We think that [appellant's] argument misconceives the underlying reason for requiring proof of the corpus delicti in

the first place. 'The grounds on which the rule [requiring proof of the corpus delicti] rests are the hasty and unguarded character which is often attached to confessions and admissions and the consequent danger of a conviction where no crime has in fact been committed' . . . . Where . . . proof of the commission of the crime is independently established, the danger of innocent convictions is obviated and a confession is admissible to show the degree of the crime as well as the identity of its perpetrator." *Id.* at 83-84, 295 A.2d at 275 (citation omitted). Additionally, here, as in *Leamer,* there was evidence introduced that a robbery took place before the admission of the statements of the appellants. The victim was found with his pocket pulled out and loose change lying near the pocket. Also, the marijuana found in the victim's apartment was identified as belonging to the same lot of marijuana as that found in the appellant Reed's fiancee's home.

The three remaining issues are raised only by the appellant Weeden. He first claims that he was improperly restricted in his cross-examination of a police officer. Before the police officer testified, the prosecution had called a witness who testified "[w]e noted that the victim's pockets were turned inside out; and lying in and around the body in a blood substance we noted some change." The prosecution showed several photographs to this earlier witness who said that the photographs showed that the victim's right-hand pants pocket was pulled out. The prosecution then moved for the admission of these photographs. Appellant Reed's counsel objected to their admission saying that they were "unduly prejudicial" and "rather gory." The prosecution argued that the photographs should be admitted to help establish a robbery. "[I]t is important to show every element of robbery or attempted robbery including excursion into [the victim's] pockets." Appellant Reed's counsel answered back "this has already been

testified to, Your Honor, by this witness that money was lying in the blood." Appellant Reed's counsel then agreed to stipulate "that the pictures if introduced, would show that the right-hand pocket of the victim, at the time the photographs were taken was turned inside out; that the victim was lying on the floor; and that a quantity of coins was lying in what appears to be blood near his body." Appellant Weeden's counsel refused to stipulate to the above facts since he said that appellant Weeden had no objection to the admission of the photographs. The trial court ruled that the photographs were inadmissible. Subsequently, the victim's wife testified that her husband did not carry a wallet with him but rather kept his money in his pockets. On the evening of the murder, she knew that he had money in his pockets because while shopping they had stopped for gas and he had paid for the gas with money from his pockets. She also testified that after she called the police she noticed that her husband's right-hand pocket had been turned inside out. The prosecution then called the police officer who also testified that he observed that the right-hand pocket of the victim's pants was pulled out and that coins in blood were located near the victim's body. During cross-examination of this police officer, appellant Weeden's counsel wanted to show the police officer one of the photographs which earlier had been ruled inadmissible. The prosecution objected, saying "either that photograph is ruled into evidence or it is ruled out of evidence." The appellant Weeden's counsel said that he did not want to show the photograph to the jury but that, if necessary, he would introduce it in his case in chief. Appellant Reed's counsel again objected to the admission into evidence of the photograph even if appellant Weeden's counsel were to offer it in his case in chief. The trial court ruled that since he had ruled that photograph inadmissible it could not be shown to the police officer by appellant Weeden's

counsel. Appellant Weeden's counsel continued to cross-examine the police officer about the appearance of the pants pocket without using the photograph.

Appellant Weeden does not challenge the trial court's ruling that the photograph was inadmissible. He argues, however, that even though the photograph could not be shown to the jury he should have been permitted to use the photograph to *impeach* the police officer's testimony about the condition of the victim's pocket and the location of the coins. We cannot agree. If a photograph cannot be shown to the jury, it is useless for impeachment purposes. Any photograph offered to destroy the credibility of the police officer had to be admissible as evidence. The jury could not possibly have determined whether the police officer's testimony had been impeached by a photograph if the jury never saw that photograph. The use of a photograph, or other document, which is inadmissible may be shown to a witness for the limited purpose of reviving the witness's present memory. *See Commonwealth v. Canales*, 454 Pa. 422, 311 A.2d 572 (1973). Appellant Weeden's attempts to use the photograph, however, were not for that limited purpose. His purpose was to impeach the police officer's testimony. An inadmissible photograph, however, cannot be used for that purpose.

The second issue raised by appellant Weeden is whether the trial court committed reversible error when it refused to allow Weeden's defense counsel to present his opening statement to the jury immediately after the prosecution's opening statement. Under rule 1116(a) of the Pennsylvania Rules of Criminal Procedure, a defendant may choose to present an opening statement immediately after the prosecution's opening statement or wait until the close of the prosecution's case. Rule 1116(a) provides that "After the jury has been sworn, the attorney for the Commonwealth shall make an opening statement to the jury. The defendant or his attor-

ney may then make an opening statement or reserve it until after the Commonwealth has presented its case." In this case, a problem arose because the trial court was faced with different requests by the appellants. The appellant Weeden's counsel wanted to open immediately after the prosecution's opening statement, but appellant Reed's counsel wanted to reserve his opening statement until after the prosecution had presented its case. Since the appellants did not agree, the trial court refused to permit the appellant Weeden's counsel to open after the prosecution's opening statement. The trial court said its decision "was based on the thought that this would afford a more orderly and balanced approach in the case and avoid the sandwiching effect of a defense opening at the beginning and again at the end of the Commonwealth's case." Under the circumstances, we find no basis for concluding that the trial court's ruling constituted reversible error.

The last argument raised by appellant Weeden is that the trial court erred when it decided during the suppression hearing that appellant Weeden lacked the requisite standing to challenge the search of appellant Reed's fiancee's home and the admissibility of the fruits of that search—the marijuana. Appellant Reed was permitted to challenge the search and seizure although relief was denied. We find that the trial court improperly found that appellant Weeden did not have standing.

"The restrictions upon searches and seizures were obviously designed for protection against official invasion of privacy and the security of property." *Jones v. United States*, 362 U.S. 257, 261, 4 L. Ed. 2d 697, 702, 80 S. Ct. 725, 731 (1960). In *Simmons v. United States*, 390 U.S. 377, 390, 19 L. Ed. 2d 1247, 1256-57, 88 S. Ct. 967, 974 (1968), the United States Supreme Court reviewed the standing requirements as follows: "At one time, a defendant who wished to assert a Fourth Amendment objection was required to show that he was the

owner or possessor of the seized property or that he had a possessory interest in the searched premises. . . . [W]e relaxed those standing requirements in two alternative ways in Jones v. United States, supra. *First* we held that *when,* as in Jones, *possession of the seized evidence is itself an essential element of the offense with which the defendant is charged, the Government is precluded from* denying that the *defendant has the requisite possessory interest to challenge the admission of the evidence.* Second, we alternatively held that the defendant need have no possessory interest in the searched premises in order to have standing; it is sufficient that he be legitimately on those premises when the search occurs." (Emphasis added.)

In *Jones,* the Court described the dilemma of a defendant who is charged with a crime which involves possession but is denied standing to assert his fourth amendment rights if he does not claim that he possessed the property—"[A] defendant seeking to comply with what has been the conventional standing requirement has been forced to allege facts the proof of which would tend, if indeed not be sufficient, to convict him . . . . He has been faced . . . with the encouragement that he perjure himself if he seeks to establish 'standing' while maintaining a defense to the charge of possession." 362 U.S. at 261-62, 4 L. Ed. 2d at 703, 80 S. Ct. at 731. The Court precluded in such instances the prosecution—which sought to establish at trial that the defendant had a possessory interest—from denying at the suppression hearing that the defendant lacked the requisite possessory interest for standing. "[T]o hold to the contrary . . . would be to permit the Government to have the advantage of contradictory positions as a basis for conviction . . . . The prosecution [would subject] the defendant to the penalties meted out to one in lawless possession while refusing him the remedies designed for one in that situation. It is not consonant with the

amenities, to put it mildly, of the administration of criminal justice to sanction such squarely contradictory assertions of power by the Government." 362 U.S. at 263-64, 4 L. Ed. 2d at 703-04, 80 S. Ct. at 732; *see United States v. Allsenberrie,* 424 F.2d 1209 (7th Cir. 1970).

The prosecution in this case did not contend that the appellant was the man who actually shot the victim. Rather, the prosecution proceeded on the theory that the appellant was guilty of murder because the death resulted from the act of an accomplice, Ronald Williams, during the commission of a robbery. To convict, therefore, it was necessary to establish that a robbery occurred. The marijuana which was obtained in the search and seizure was from the same lot as that found in the victim's apartment and was introduced as the fruit of the robbery. An essential element of robbery is the taking of goods from another. In order to have a taking, the robber must have taken *possession* of the goods of another. *Cf. Commonwealth v. Simpson,* 436 Pa. 459, 260 A.2d 751 (1970). The prosecution here was contending that the marijuana found in the presence of the appellant's co-defendant at the time of the search was stolen from the victim's apartment. The jury could have inferred from this fact that the appellant Weeden had constructive possession of the marijuana at the time of the search. From this constructive possession by appellant Weeden at the time of the search, the jury might have inferred that the appellant Weeden had either possession or constructive possession at the time of the robbery. Thus, the prosecution would have established that appellant Weeden was a participant in the robbery. *Compare United States v. Price,* 447 F.2d 23 (2d Cir.), *cert. denied,* 404 U.S. 912, 30 L. Ed. 2d 186, 92 S. Ct. 232 (1971).

The prosecution by challenging the appellant Weeden's standing at the suppression hearing was asserting

a position contrary to its position at trial. Appellant Weeden could have expressly claimed an interest in the marijuana during the suppression hearing and been protected from use of his admission at trial. *See Simmons v. United States*, 390 U.S. 377, 19 L. Ed. 2d 1247, 88 S. Ct. 967 (1968). But if no robbery took place, as he contended, and he had no possessory interest in the marijuana, he would have had to perjure himself to obtain standing. Under these circumstances, the prosecution cannot challenge appellant Weeden's standing by claiming he had no interest in the marijuana. *See Jones v. United States*, 362 U.S. 257, 4 L. Ed. 2d 697, 80 S. Ct. 725 (1960). We note that there was no evidence in this case that appellant Weeden had surrendered his interest in the allegedly stolen marijuana, by sale or otherwise, prior to the search. *See Brown v. United States*, 411 U.S. 223, 36 L. Ed. 2d 208, 93 S. Ct. 1565 (1973); *United States v. Cowan*, 396 F.2d 83 (2d Cir. 1968).

Because appellant Weeden was improperly denied standing to challenge the search and seizure, the matter must be remanded. Appellant Weeden is entitled to a new suppression hearing limited to a determination of whether the search of appellant Reed's fiancee's home and the seizure of the marijuana were legal. As to appellant Reed, there has already been a final determination that the search and seizure were valid and no issue has been raised by appellant Reed in this appeal concerning that determination. We cannot, however, assume that appellant Weeden would not develop other facts, by presenting witnesses or cross-examining prosecution witnesses, which might invalidate the search and seizure and, therefore, the use of the marijuana during the trial of appellant Weeden. The error, in denying appellant Weeden the opportunity to challenge the use of the marijuana during his trial cannot be considered harmless beyond a reasonable doubt. *See Chapman v. California*, 386 U.S. 18, 17 L. Ed. 2d 705, 87 S. Ct. 824

(1967). The thrust of the prosecution's case was that the purpose of the robbery was to obtain marijuana and that the marijuana found in the home of appellant Reed's fiancee was the fruit of that robbery. Without the marijuana evidence, the prosecution's case would have been significantly weaker and the appellant Weeden might not have been convicted of murder in the first degree. We note that in a separate trial, Ronald Williams, who fired the fatal shot during the robbery, was convicted of only voluntary manslaughter.

We remand for a new suppression hearing to permit appellant Weeden to challenge the search and seizure. If it is concluded that the search and seizure were improper, a new trial shall be awarded. If, however, the finding is to the contrary, the judgment of sentence shall be affirmed. A further appeal may be filed to this Court from the order of the trial court following the suppression hearing.

The judgment of sentence of appellant Major Reed at No. 6649 is affirmed. The matter involving appellant Angelo Weeden at No. 6647 is remanded for further proceedings consistent with this opinion.

––––––

CONCURRING AND DISSENTING OPINION BY MR. JUSTICE EAGEN:

I disagree with Mr. Justice MANDERINO's conclusion in the Weeden appeal. In my view, the trial court was correct in ruling Weeden lacked standing to challenge the search of the apartment of his co-defendant's fiancée. In concluding Weeden had standing, Mr. Justice MANDERINO relies on *Jones v. United States,* 362 U.S. 257, 80 S. Ct. 725 (1960). I am in full agreement with the holding of *Jones* as interpreted by the United States Supreme Court in *Simmons v. United States,* 390 U.S. 377, 88 S. Ct. 967 (1968). Therein, the Supreme Court stated: "[W]hen, as in Jones, possession of the seized evidence is itself an essential element of the offense

with which the defendant is charged, the Government is precluded from denying that the defendant has the requisite possessory interest to challenge the admission of the evidence [at the suppression hearing]. *Id.* at 390, 88 S. Ct. at 974. The Supreme Court in *Jones* held that if the accused were charged with possession, an assertion by the government that he lacked standing to contest the admissibility of the unlawful goods he allegedly possessed would amount to "squarely contradictory assertions of power by the Government." *Jones,* supra, 362 U.S. at 264, 80 S. Ct. at 732.

However, the instant case differs from *Jones* in that Weeden was not charged with an offense in which possession of the seized goods was an element. In *Jones* the defendant was charged with having (1) " 'purchased, sold, dispensed and distributed' narcotics," and with having (2) " 'facilitated the concealment and sale of' the same narcotics . . . ." *Id.* at 258, 80 S. Ct. at 729. "Possession was the basis of the Government's case against petitioner." 362 U.S. at 258, 80 S. Ct. at 730. The Supreme Court's later *Simmons* decision interpreted *Jones* as applying to situations in which "the seized evidence is itself *an essential element of the offense with which the defendant is charged* . . . ." *Simmons,* supra, 390 U.S. at 390, 88 S. Ct. at 974. (Emphasis added.)

Instantly, Angelo Weeden was indicted for murder and voluntary manslaughter. Weeden asserted standing to suppress the admission of marijuana into evidence which the Commonwealth alleged was stolen from the deceased, James Montgomery, at the time of his murder. There is no doubt that murder and voluntary manslaughter do not inherently require possession of any goods, including marijuana. However, instantly, the Commonwealth tried Weeden and his co-defendant, Major Reed, on the basis of felony-murder arising during the perpetration of robbery. Mr. Justice MANDERINO posits that the marijuana was an "essential element" of

the robbery in that "[a]n essential element of robbery is the taking of goods from another. In order to have a taking, the robber must have taken *possession* of the goods of another." [Emphasis in original.]

I disagree with this reasoning for I am convinced robbery is not a possessory offense in the same sense as the narcotics indictments before the United States Supreme Court in *Jones*. Therefore, I believe that *Jones* cannot be used as a vehicle to the result Mr. Justice MANDERINO reaches. In fact, in the decision of *Simmons v. United States*, supra, the United States Supreme Court clearly labelled robbery as a non-possessory crime. In the *Simmons* case, one Garrett and one Simmons were indicted and tried for robbery of a savings and loan institution. The home of a Mrs. Mahon was searched and a suitcase was found containing incriminating paraphernalia used in the robbery. Garrett moved to suppress the admission of the suitcase asserting that "although he could not identify the suitcase with certainty, it was similar to one he had owned . . . ." *Simmons*, supra, 390 U.S. at 381, 88 S. Ct. at 969. The Government used the testimony given by Garrett at the suppression hearing against him during his robbery trial. The United States Supreme Court in deciding for Garrett on grounds not apposite to this issue, made it emphatically clear that robbery was a non-possessory offense. The Court stated: "The dilemma faced by defendants like Garrett is most extreme in prosecutions for possessory crimes, for then the testimony required for standing itself proves an element of the offense. We eliminated that Hobson's choice in Jones v. United States, supra, by relaxing the standing requirements. This Court has never considered squarely the question whether defendants charged with non-possessory crimes, like Garrett, are entitled to be relieved entirely." *Id.* at 391-392, 88 S. Ct. at 975. Hence, the United States

Supreme Court has deemed robbery to be a non-possessory crime.

This statement by the United States Supreme Court, alone, should be conclusive in defeating the position taken in Mr. Justice MANDERINO'S opinion. However, Mr. Justice MANDERINO cites *United States v. Price,* 447 F.2d 23 (2d Cir.), cert. denied, 404 U.S. 912, 92 S. Ct. 232 (1971) in support of his position. Upon a review of *Price,* I find that it rejects Mr. Justice MANDERINO'S position, rather than supports it. Therein, John Thomas Price was charged with conspiracy to steal magnetic copper wire while said wire was moving in interstate commerce. Price was further charged with the substantive crime of theft, 18 U.S.C. §659. In deciding that Price lacked standing to suppress wire seized from the premises of the co-defendant, the Court of Appeals of the Second Circuit held: "He was not charged with possession and the search was not directed against him. Nor has he shown any proprietary interest in the premises, and there is no indication that he was on the New Milford property at the time of the search. As held in Alderman v. United States, 394 U.S. 165, 171-172, 89 S. Ct. 961, 22 L. Ed. 2d 176 (1969), a person whose rights were not violated by the search is given no special standing as a co-defendant or co-conspirator. Accord, United States ex rel. Cardaio v. Cassacles, 446 F.2d 632, at 635 (2 Cir. 1971)." *Price,* supra, 447 F.2d at 30. See also *United States ex rel. Cardaio v. Cassacles,* 446 F.2d 632 (2d Cir. 1971), and *United States v. Durkin,* 335 F. Supp. 922 (S.D. N.Y. 1971).

Mr. Justice MANDERINO'S assertion that robbery involves a "taking", and, a taking necessarily involves possession, must similarly apply to the crime of theft charged against the defendant in *Price.* Nonetheless, this position was rejected in *Price,* and, I feel we should likewise reject it. As decided in *Simmons* robbery is not a possessory crime. The holding in *Jones* concerns

only those possessory crimes in which "possession" both convicts and confers "standing." *Jones*, supra, 362 U.S. at 263, 80 S. Ct. at 732. Mr. Justice MANDERINO has cited not one case which would extend the holding of *Jones* to non-possessory crimes.

I dissent.

Mr. Chief Justice JONES and Mr. Justice POMEROY join in this opinion.