Commonwealth *v.* Campas, Appellant.

348

Submitted March 28, 1974. Before WATKINS, P. J., JACOBS, HOFFMAN, CERCONE, PRICE, VAN DER VOORT, and SPAETH, JJ.

*Francis P. Burns,* Assistant Public Defender, for appellant.

*Robert J. Gillespie, Jr.,* Assistant District Attorney, and *Patrick J. Toole, Jr.,* District Attorney, for Commonwealth, appellee.

OPINION BY SPAETH, J., December 11, 1974:

Petitioner, George Campas, appeals from a denial without hearing of relief under the Post Conviction Hearing Act, Act of Jan. 25, 1966, P. L. (1965) 1580, §1 *et seq.,* 19 P.S. §1180-1 *et seq.* (Supp. 1974-75).

The procedural history of this case is voluminous. Originally, on June 13, 1968, petitioner was convicted by a jury of robbery with accomplice and conspiracy. He then filed two petitions for writ of habeas corpus, which after argument pursuant to a rule to show cause why hearing should not be held were denied without hearings on September 8, 1969, and November 10, 1969. The latter decision was affirmed *per curiam. Commonwealth v. Campus,* 217 Pa. Superior Ct. 865, 274 A. 2d 543 (1970). On February 24, 1970, a motion for arrest of judgment or new trial was denied. A timely and direct appeal to this court resulted in a judgment of non pros. for failure to proceed. On March 17, 1970, petitioner filed a petition for writ of habeas corpus, a petition for writ of *coram nobis,* and a petition under the Post Conviction Hearing Act, *supra.* Again, on each petition there issued a rule to show cause why hearing should not be held. After argument each petition was denied without hearing. No appeals followed. The present petition is therefore the second PCHA petition and the sixth request for collateral relief.

I

To be eligible for relief under the Post Conviction Hearing Act a person must show: that he has been convicted of a crime; that he is incarcerated in a Pennsylvania penitentiary, or on parole or probation; that his conviction resulted from an abridgment of a right guaranteed by the constitution or laws of the United

States or Pennsylvania; and that the error resulting in his conviction and sentence has not been fully litigated or waived. PCHA §3, 19 P.S. §1180-3.

Petitioner first reiterates the charges of unlawful arrest and use of perjured testimony that he raised in earlier petitions. As these charges were finally litigated then, they cannot serve now to make petitioner eligible for relief. 19 P.S. §§1180-3 and 1180-4. *See also Commonwealth v. Frazier*, 455 Pa. 162, 314 A. 2d 16 (1974).

Petitioner next contends that he was denied counsel at the preliminary hearing because his counsel did not represent him alone but also represented the co-defendants. In 1970 the United States Supreme Court held that the preliminary hearing was a critical stage of the prosecution, from which it followed that an accused was constitutionally entitled to counsel at the hearing. *Coleman v. Alabama*, 399 U.S. 1 (1970). Petitioner's hearing was held in 1968. In *Adams v. Illinois*, 405 U.S. 278 (1972), the Court held that *Coleman* should not be given retroactive application. Therefore, in this case there was no need to hold a hearing to determine whether the attention of petitioner's counsel at the preliminary hearing had been so divided as to deny representation to petitioner. As the Pennsylvania Supreme Court said in *Commonwealth v. Leamer*, 449 Pa. 76, 81, 295 A. 2d 272, 274 (1972): "Although the United States Supreme Court held in 1970 that a preliminary hearing is a critical stage in a criminal proceeding, requiring the presence of counsel unless knowingly waived . . . that decision is not retroactive. . . . We need not consider, therefore, whether appellant was in fact denied counsel at the preliminary hearing."

Petitioner also claims that he was denied effective trial counsel because certain pretrial motions, particularly a motion to suppress evidence as the fruit of an unlawful search, were not filed on his behalf. The argu-

ment is not patently frivolous. However, in his second petition for writ of habeas corpus petitioner contended that trial counsel was ineffective since helpful alibi witnesses were not called. The court found that counsel had been effective, and as noted above, this court affirmed *per curiam*. *Commonwealth v. Campus, supra.* In the subsequent petitions (for writ of habeas corpus, writ of *coram nobis*, and the first PCHA petition) the claim that trial counsel should have filed a motion to suppress was not made. Although the claim has therefore not been specifically litigated at a prior proceeding, it must be presumed that at the several prior proceedings, in particular the second habeas corpus proceeding, petitioner and his then counsel (there have been several) intelligently reviewed the circumstances and decided what their best chances for success were. This would appear to hold true even though counsel did not write the actual petition, since he did argue it before the court below and took the appeal to this court. The fact that the chosen tactic was not successful does not mean that petitioner can come before the courts again and seek relief on an alternate theory. *Commonwealth v. Frazier, supra.* Petitioner's failure to make the particular claim before must be considered a knowing and understanding waiver of his right to do so now.[1] No exceptional circumstances justify his conduct. PCHA §§3 and 4, 19 P.S. §§1180-3 and 1180-4. *See generally Commonwealth v. Ligon,* 454 Pa. 455, 314 A. 2d 227 (1973); *Commonwealth v. Bender,* 226 Pa. Superior Ct. 482, 313 A. 2d 309 (1973); *Commonwealth v. Adams,* 212 Pa. Superior Ct. 150, 239 A. 2d 851 (1968).

---

[1] The rule that waiver does not apply to habeas corpus proceedings prior to the effective date (March 1, 1966) of the PCHA, *Commonwealth v. Cannon,* 442 Pa. 339, 275 A.2d 293 (1971), is not apposite here because the second petition for writ of habeas corpus, which is the petition here under consideration, was filed in 1969.

Other claims now raised by petitioner were either previously stated in different terms or not mentioned at all. The court below could therefore consider them waived.[2] In any case, each is without a trace of support in the record so no hearing was required. PCHA §9, 19 P.S. §1180-9.

## II

Petitioner raises one last argument that is novel and by its nature could not be waived. Upon receipt of the present petition Judge OLSZEWSKI issued a rule on the Commonwealth to show cause why a hearing should not be held. At argument on the rule petitioner filed a motion requesting Judge OLSZEWSKI to disqualify himself. The basis of the motion was a letter of January 3, 1972, written by the judge to Earnest Patton, superintendent of the prison where petitioner was incarcerated. The letter was in response to the superintendent's request that the judge as petitioner's trial judge comment on the propriety of petitioner being released from prison on a pre-release program. Judge OLSZEWSKI replied that in his considered judgment petitioner was a dangerous, vicious, professional criminal and that pre-release would not be in the best interests of society. Petitioner contends that this reply demonstrated that the judge could not render a fair decision on his PCHA petition.

The General Assembly created the pre-release program in 1968 in an attempt to further rehabilitation of prisoners. Sielaff, The Pennsylvania Correctional System, 43 Pa. Bar Ass'n. Q. 497, 501 (1972). The Act of July 16, 1968, P. L. 351, No. 173, §2, as amended Dec. 2, 1970, P. L. 832, No. 274, §1, 61 P.S. §1052, provides:

---

[2] Appellant's contention that the district attorney's failure to answer within twenty days, as required by PCHA §8, 19 P.S. §1180-8, admits all contentions in the petition is at least in the circumstances here without merit.

"Any person transferred to and confined in a pre-release center may be released therefrom temporarily with or without direct supervision at the discretion of the Bureau of Correction in accordance with rules and regulations as provided in section 3 of this act [61 P.S. §1053)], for the purposes of gainful employment, vocational or technical training, academic education and such other lawful purposes as the bureau shall consider necessary and appropriate for the furtherance of the inmate's individual pre-release program." *Id.* An initial regulation declared that in deciding whether to grant pre-release the institutions should look to "over-all behavior, adjustment, response to programs, and work or school efforts. . . ." Administrative Directive No. 5A, 1 Pa. Bull. 1662, 1664 (August 14, 1971). This regulation further provided that the presiding judge in the county of conviction should be notified before actual prisoner release. Prior approval by the sentencing judge, however, was not required. Each institution decided for itself the need for judicial comment. Comment, The Home Furlough Program, 47 Temp. L. Q. 288, 291 (1974). The fact that release was thereby in the sole discretion of the institution superintendent spurred an outcry from judges,[3] district attorneys, various communities, and in the legislature. Comment, Temp. L.Q., *supra.* In response, the Bureau of Corrections promulgated the current controlling regulation, Administrative Directive No. 805, 3 Pa. Bull. 570 (March 31, 1973), which outlines specific minimum criteria for pre-release selection. Among these is a requirement that the sentencing judge approve all releases.

Judge OLSZEWSKI's letter was dated on January 3, 1972, so it was written before the Bureau of Correction

[3] *See* Judge SWEET, 110 Judges Vote on Act 274, 61 P.S. §1052, 43 Pa. Bar Ass'n. Q. 502 (1972).

specifically required judicial approval. As indicated, however, under the earlier regulation consideration of judicial comment was left to the individual institution. The superintendent of petitioner's prison evidently believed that the views of Judge OLSZEWSKI, who was the trial judge and had also heard all of the several post-conviction proceedings discussed above, would help in deciding whether petitioner should be released. Under these circumstances, Judge OLSZEWSKI would have been remiss in not responding to the superintendent's letter. The subsequent adoption of Directive 805 with its requirement of judicial approval shows the desirability of such action by trial judges.[4] The narrow issue on this appeal, then, is whether Judge OLSZEWSKI, who acted in accord with his judicial responsibilities, should have been thereafter precluded from hearing requests for collateral relief. We think not.

First, the judge's characterization of petitioner was reasonable. At the time the letter was written, petitioner had been convicted of robbery. The robbers wore masks, cut telephone wires, broke into the secluded home of two elderly citizens by crashing through a double thermopane window, and held the couple at gunpoint while their house was robbed. As petitioner's trial judge, Judge OLSZEWSKI was aware of these facts. He was further no doubt aware of petitioner's previous criminal record.[5] On these facts a detached judge could

---

[4] In the analogous situations of parole and pardon, the General Assembly too has recognized the value of comments by the trial judge. The Act of May 27, 1943, P.L. 767, §9, as amended Dec. 27, 1965, P.L. 1230, §10, 61 P.S. §331.19, states that the Board of Parole "shall, in all cases, consider the recommendations of the trial judge and of the district attorney . . . each of whom is directed to submit to the board his recommendation and the reasons therefor, with respect to each parole application."

[5] Petitioner had been arrested eight times before the robbery, resulting in five convictions. The convictions were, respectively,

reasonably characterize petitioner as a dangerous, vicious, professional criminal.[6]

Second, the procedures followed here were in accordance with the Pennsylvania Rules of Criminal Procedure, which provide that the trial judge should be assigned all post-conviction petitions unless the interests of justice require different assignment. Pa. R. Crim. P. 1502(b), 19 P.S. Appendix. Bias or prejudice usually connote personal hostility to or friendship with one of the parties. Petitioner asks that we disqualify a judge not because of the judge's personal opinion but because of an official opinion acquired by the judge as the result of discharging his responsibility at trial. It is, however, this very involvement that provides the judge with the full understanding needed to adjudicate post-conviction matters relating to that trial. *Williams v. United States,* 307 F. Supp. 534 (W.D. Pa. 1970), aff'd, 432 F. 2d 439; *United States v. Gilboy,* 162 F. Supp. 384, 394 (M.D. Pa. 1958). As stated in *Mirra v. United States,* 379 F. 2d 782, 787-788 (2d Cir. 1967):

"Any opinions formed for or against a party by reason of the evidence and observed conduct before a judge in a judicial proceeding, and the judge's expressions of such opinions, however vigorous, are not the personal 'bias and prejudice' required to disqualify a judge.

. . . .

"And the fact that personal observations by the judge on trial necessarily enter into his rulings is not cause for disqualification. Indeed, one of the purposes . . . was to make use of such knowledge of the trial

---

for conspiracy (bad checks), worthless checks, conspiracy to defraud, worthless checks, and accepting bawd money.

[6] Subsequent to his letter the judge was informed by the Pennsylvania State Police that petitioner and two companions escaped from the State Correctional Institution at Camp Hill. (Petitioner was apprehended in another state.) This further supports the correctness of the judge's characterization of petitioner.

occurrences in passing on attacks on convictions because of such occurrences." Accordingly, to dispose of the present petition was Judge OLSZEWSKI'S responsibility, as it was his responsibility to dispose of petitioner's several other applications for post-conviction relief. Here, and on each of the other applications, the judge acted impartially, stating the reasons for his action in a written, detailed opinion. His disqualification was neither required nor desirable.

The order of the court below is affirmed.