J-S18005-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| STEVEN PROCOPIO | : | |
| | : | |
| Appellant | : | No. 920 WDA 2024 |

Appeal from the Judgment of Sentence Entered December 9, 2022
In the Court of Common Pleas of Lawrence County Criminal Division at
No(s): CP-37-CR-0000934-2018

BEFORE:   DUBOW, J., NICHOLS, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY DUBOW, J.:                **FILED: AUGUST 27, 2025**

Appellant, Steven Procopio, appeals from the December 9, 2022 judgment of sentence of life imprisonment entered in the Lawrence County Court of Common Pleas following his conviction by a jury of two counts of Second-Degree Murder and one count of Third-Degree Murder.[1]  Appellant challenges the sufficiency and weight of the evidence, certain evidentiary rulings, and the denial of his motions for judgment of acquittal and for a mistrial.  After careful review, we affirm.

The relevant facts and procedural history are as follows.  On October 16, 2018, City of New Castle police officers arrived at the home of Nichole Pumphrey following a 911 call.  The officers who arrived on the scene

_____

[*] Former Justice specially assigned to the Superior Court.

[1] 18 Pa.C.S. §§ 2502(b)-(c).

discovered the body of Lawrence Cannon in the living room with a gunshot wound to his head and Ms. Pumphery next to him, also with a gunshot wound to the head.  Police also discovered the body of Ms. Pumphrey's 10-year-old daughter, A.E., who also died from a gunshot wound to the head.

Police officers found no signs of forced entry or struggle.  They found three 40-caliber bullet casings, one under Ms. Pumphrey's body, one between Ms. Pumphrey and Mr. Cannon, and one on the sixth stair of the residence, where officers also found a smear of blood.

That day, as part of their investigation, police officers interviewed Appellant, Anthony "Mook" Cooper, and Jody Hammer, who is Appellant's mother.  During this first interview with police, Appellant indicated he was at Ms. Pumphrey's residence the day before the shooting until 9:30 PM and did not return.  Appellant also informed police officers that there were two black males residing at Ms. Pumphrey's home and he believed one of them may have committed the murders.

Four children were present in the residence at the time of the shooting, including K.M., Ms. Pumphery's seven-year-old daughter.  Janice Wilson of the Children's Advocacy Center ("CAC") interviewed the children, after which children returned to their parents.  The following day, police officers interviewed K.M. for a second time.  K.M. reported that her mother's friend and "Jody's son," who she later identified as Appellant, were at the residence on the day of the incident.  She stated that, on that day, she heard a gunshot and went downstairs with A.E. to see what had happened.  According to K.M.'s

statement, A.E. asked "What's going on?" and then she saw a person, who K.M. later identified as Appellant, shoot A.E.

The day after the murders, Detective Branddon Hallowich and Detective Fred Buswell re-interviewed Appellant. Appellant again indicated that he was at Ms. Pumphrey's residence the evening before the murder but left with Ms. Hammer around 9:30 PM to pick up Ms. Hammer's daughter and her boyfriend. He further stated that, upon returning to Ms. Hammer's residence, he went to bed, and, during the night, Mr. Cooper took Ms. Hammer's vehicle and went to Sheetz. Appellant denied being involved in the murders and stated that Mr. Cooper was the only person that he knew with a firearm. He admitted that he and Ms. Hammer had spent "a couple of hours" the night before this interview talking about the murders and that they drove Mr. Cooper to Cleveland.

The detectives asked Appellant why K.M. would have identified him as A.E.'s shooter. Appellant speculated it was because he had been at Ms. Pumprey's home shooting an air gun on a prior occasion. Appellant insisted he had not shot anyone. The detectives then ended the interview.

Shortly thereafter, Appellant asked to speak again with the police officers. Appellant proceeded to explain that, on the night of the incident, Mr. Cooper asked Appellant to go with him to the store to get a blunt and offered to buy Appellant cigarettes. Rather than stop at any one of the numerous convenience stores that they passed, however, Mr. Cooper drove to Ms. Pumphrey's residence. According to Appellant, when they arrived, the men

exited the vehicle and approached the side entrance of the residence. Appellant stated that he believed that he and Mr. Cooper were going into the residence to talk about money and drugs, but as they approached the door, Mr. Cooper took out a gun and entered the residence. Appellant stayed outside the residence as a lookout. He stated that from his position outside, he first heard Ms. Pumphrey exclaim that she did nothing, then a single gunshot, followed by two additional gunshots. Appellant stated that he turned around and saw A.E., K.M., and their approximately two-year-old sibling walking down the stairs. He then heard a gunshot and saw A.E. on the ground. He and Mr. Cooper then left the residence and returned to Ms. Hammer's home. Appellant stated that he believed that Mr. Cooper planned to rob the victims, but not kill anyone.

On January 7, 2019, the Commonwealth charged Appellant with three counts of Second-Degree Murder, three counts of Conspiracy to Commit Second-Degree Murder, and one count of Firearms Not to be Carried Without a License.[2, 3]

Appellant's trial commenced on October 11, 2022. The Commonwealth presented the testimony of, among other witnesses, Detective Hallowich, who

_____

[2] The Commonwealth subsequently withdrew, pre-trial, the Conspiracy charge related to the murder of A.E., and during trial, the remaining Conspiracy charges. Following the Commonwealth's case-in-chief, the Commonwealth withdrew all charges arising from the murder of Mr. Cannon.

[3] The Commonwealth also charged, and Mr. Cooper pled guilty to, the murders of Ms. Pumphrey and Mr. Cannon.

testified consistently with the above facts. Relevant to the instant appeal, during his testimony pertaining to his interviews with Ms. Pumphrey's father, Jeff Pumphrey, Ms. Hammer, and K.M., Appellant objected to Detective Hallowich's statements as hearsay. Subsequently, Appellant moved twice for a mistrial based on Detective Hallowich's testimony. Because the details of these objections and motions are critical to our analysis, we set them forth at length herein.

## Mr. Pumphrey's Statement to Police

First, Appellant objected when the Commonwealth asked Detective Hallowich "what was learned from Mr. Pumphrey," when Detective Hallowich interviewed him at the scene of the murders. In response, the Commonwealth replied, "it is hearsay, but it's going to show why the officer took the next steps that he did." N.T., 10/12/22, at 70. The court overruled the objection and "allow[ed the testimony] for that purpose." *Id.* Detective Hallowich then testified that Mr. Pumphrey told him that, the day before the murders, a man named "Steven" and a woman named "Jody" had been at Ms. Pumphrey's home. *Id.* at 70-71. Although Detective Hallowich could not recall whether Mr. Pumphrey described "Steven" and "Jody" in more detail, he testified that "[e]ventually" the police determined that "Steven" was Appellant and "Jody" was Ms. Hammer. *Id.* at 71.

## Ms. Hammer's Statement to Police

Appellant then made the "same objection" when the Commonwealth asked Detective Hallowich what he had learned from interviewing Ms.

Hammer. *Id.* at 73. At an on-the-record sidebar, and in response to the objection, the trial court asked the Commonwealth if it intended to call Ms. Hammer as a witness, to which the Commonwealth replied, "I might." *Id.* The trial court then observed that "If she - - the information is purely hearsay, and if she doesn't testify, that could be problematic. Unless - - unless this information is just for the purpose of . . . leading to the next step, and it doesn't create any inference of guilt, I mean, that's the really critical thing." *Id.* at 73-74. The Commonwealth then explained that what Detective Hallowich learned from interviewing Ms. Hammer "just goes to their next investigative step." *Id.* at 74. When asked for a proffer, the Commonwealth stated that it believed Detective Hallowich would testify that Ms. Hammer "gave him information as to where [Mr.] Cooper was that night and where [Appellant] was and what they did was, they then ran the phone records to try and confirm the location. They then - - when they interviewed [Appellant] the second time, they asked him a series of questions to compare what she had said." *Id.* The court then overruled the objection, stating "I'm going to allow it. It's part of the investigation, so I'm going to allow it." *Id.* Detective Hallowich subsequently testified—after the Commonwealth instructed him to limit his testimony to the information he learned that led him to his next investigative step—that Ms. Hammer told him that she had been with Appellant and Aaron Butler on the day of the murders, that the three of them went to Ms. Pumphrey's home, and then to Slippery Rock, before returning to the residence shared by Appellant and Ms. Hammer around 9:00 PM and went

to sleep. *Id.* at 75. Detective Hallowich also testified that this information led him to speak with Mr. Butler and to examine cell phone geo-location data in an unsuccessful attempt to confirm the events described. *Id.* at 76.

**K.M.'s Statement to the CAC Interviewer**

Appellant lodged the same objection for a third time when the Commonwealth was questioning Detective Hallowich about K.M.'s statements. In response, the Commonwealth informed the court that K.M. would be testifying. Nevertheless, Appellant "still believe[d] it's hearsay." *Id.* at 87-88. He further argued that "If she's going to testify, then what her testimony is [is] what's important. Her statement would only come in on cross[-]examination for impeachment purposes or to refresh her recollection, so Your Honor, I don't think its admissible at this point." *Id.* at 88. Because the Commonwealth represented that K.M. would be testifying at trial, the court overruled the objection and allowed Detective Hallowich to testify.

**K.M.'s Trial Testimony**

The Commonwealth also presented the testimony of K.M. K.M. testified that her mother's screams woke her up on the night of the murders. She testified that she met A.E. and their sibling at the top of the stairs. She testified that they walked down the stairs side-by-side and that she could see Appellant and Mr. Cooper, but not Ms. Pumphrey or Mr. Cannon, who were sitting on the couch. Relevant to the instant appeal, she testified "that [Appellant shot] over by the couch and after he [shot] at the couch, he turn[ed] his head and [saw] us and I forget who shot [A.E.] but after

somebody shot [A.E.], I ran upstairs[.]" N.T., 10/24/22, at 64. K.M. confirmed that she didn't know who shot A.E. She also testified that she saw Appellant with a gun and that she "heard a bang come from that gun," but she did not remember if Mr. Cooper had a gun. *Id.* at 65. She testified that she did not remember if Appellant pointed his gun at A.E.

K.M also testified that she remembered participating in a video-recorded interview at CAC. Appellant lodged a hearsay objection when the Commonwealth asked K.M. if she remembered whether the interviewer asked her who shot A.E. The Commonwealth responded by indicating that "the interview is coming in. It's a prior consistent statement all day long. . . . We're absolutely going to play that statement next." *Id.* at 67. Appellant then argued that the court should not admit the recorded interview as a consistent statement because K.M.'s trial testimony—"I don't know who shot"—was clearly inconsistent with the statement she gave to the CAC interviewer. *Id.* at 67-68. After considering the Commonwealth's further argument—that "the rule requires there to be a statement subject to cross examination, which is the previous statement that she gave in this very courtroom. . . . We are more than capable of bringing it in, and it wouldn't be for substantive purposes"— the trial court overruled the objection. *Id.* at 68. K.M. then testified that she remembered telling the CAC interviewer that Appellant shot A.E. Upon further examination, K.M. clarified that she remembered Appellant in her home on the night of the murders, that Appellant shot in the direction of Ms. Pumphrey,

that Appellant had had a gun in his hand, and that someone shot A.E. *Id.* at 69-70.

On cross-examination, Appellant did not attempt to elicit any additional testimony from K.M. about the inconsistencies in the statement she gave to the CAC interviewer and her trial testimony, and, in particular, whether K.M. remembered seeing Appellant shoot either Ms. Pumphrey or A.E.

**First Motion for a Mistrial**

The following day, Appellant filed a motion for a mistrial in which he reasserted his argument that Detective Hallowich's testimony regarding K.M.'s forensic interview was hearsay, and the court erred in not excluding it. N.T., 10/25/22, at 4. Appellant also argued that he did not have an opportunity to cross-examine K.M. about her forensic interview. *Id.* at 5.

In response to the motion, the Commonwealth argued that Appellant's claim that he did not have the opportunity to cross-examine was specious, noting the "substantial difference between having the opportunity to cross and choosing not to, and that's exactly what happened here." *Id.* at 5-6. As the Commonwealth explained:

> Defense was so excited that [K.M.] didn't say what we thought she was going to say that he chose not to cross-examine her. He certainly had the opportunity to explore anything that he wanted to explore, and the objection that he is referring to was not an objection to the playing of the video [of the CAC interview], his objection was to the question that was asked of Detective Hallowich, and that was, what did you learn from your interview? And the purpose of that question was, okay, how did what he learn[ed] from the video, how did it change the complexion of the

investigation? What did it lead to? It was the natural course of the investigation that the question was specifically referring to.

Defense just stated that, under his position, so any time a witness forgets something, that, in his mind, that means that, oh, well, it's like that witness never testified. I mean, that would lead us to some irrational and unreasonable conclusions and results. If every time a witness forgot something, that the defense could turn around and say, okay, well, we're going to ask you to strike their street testimony. I mean, that's ridiculous.

The purpose of cross examination is to explore whether something is inconsistent or consistent. That is determined to be the engine of truth, and he chose not to pursue it. The Commonwealth is obviously opposed to the mistrial motion.

*Id.* at 6-7.

The court took the motion for a mistrial under advisement, and ultimately denied it.

The Commonwealth also showed the jury the recording of K.M.'s forensic interview with CAC, which occurred shortly after the incident, at which K.M. clearly identified Appellant as the person who shot A.E. Appellant did not object to the Commonwealth playing this part of the interview to the jury.

James W. Sides, who was incarcerated in the Lawrence County jail at the same time as Appellant, also testified on behalf of the Commonwealth. He testified that he and Appellant became fast friends while incarcerated. Mr. Sides testified that Appellant told him that Mr. Cooper, Ms. Hammer, and Appellant planned to rob Ms. Pumphrey and Mr. Cannon for money and drugs. He testified that they planned for Ms. Hammer to bring Ms. Pumphrey into another room while Appellant and Mr. Cooper robbed Mr. Cannon. He further testified that Appellant told him that Ms. Pumphrey began screaming because

she did not want to go into another room, that Mr. Cooper shot Ms. Pumphrey and Mr. Cannon, and that Appellant shot A.E. before he saw another young girl flee up the stairs. According to Mr. Sides, Appellant told him that he shot twice at the second girl while she fled and believed that he had killed her. Mr. Sides stated that he had not received any promises in exchange for his testimony.

**Second Motion for a Mistrial**

At the close of the Commonwealth's case, Appellant "renew[ed his] motion for a mistrial, this time based on they didn't call Jody Hammer." N.T., 10/25/22, at 65. Appellant represented that, at the time it objected to Detective Hallowich's testimony regarding Ms. Hammer's statement, the trial court indicated that admission of Detective Hallowich's testimony would be "problematic" if the Commonwealth did not present Ms. Hammer as a witness. *Id.* at 65, 67. The Commonwealth then reminded the court and Appellant that "the judge didn't allow me to go into the line of question" that would have been problematic and instead limited the Commonwealth's inquiry to testimony that would met the "course of conduct" hearsay exception. *Id.* at 68. The court denied the motion for a mistrial.

On October 27, 2022, the jury convicted Appellant of two counts of Second-Degree Murder relating to Ms. Pumphrey and A.E. and one count of Third-Degree Murder relating to A.E. On December 9, 2022, the court sentenced Appellant to a term of life imprisonment. Appellant filed a post-

sentence motion challenging the sufficiency and weight of the evidence, which the trial court denied.

Appellant timely appealed, however this Court dismissed the appeal for Appellant's failure to file a brief. Appellant sought and obtained post-conviction relief, which resulted in the reinstatement of his direct appeal rights, and this appeal *nunc pro tunc* followed. Both Appellant and the trial court complied with Pa.R.A.P. 1925.

Appellant raises the following six issues on appeal:

[1.] Whether the [t]rial [c]ourt erred in overruling [] Appellant's objections to testimony as hearsay during the Commonwealth's examination of Detective Bran[d]don Hallowich[?] Specifically, [] Appellant contends that out[-]of[-]court statements of Jeff Pumphrey, Jody Hammer, and K.M., as testified to by Detective Hallowich are inadmissible under the Pennsylvania Rules of Evidence.

[2.] Whether the [t]rial [c]ourt erred in failing to declare a mistrial on motion of [] Appellant[] when, after the [c]ourt overruled [] Appellant's objection of hearsay to the introduction of an out[-]of[-]court statement of witness K.M. during the Commonwealth's examination of Detective Bran[d]don Hallowich, the witness K.M. subsequently testified either that she did not know or could not remember the information in the out[-]of[-]court statement as elicited from Detective Hallowich[?]

[3.] Whether the [t]rial [c]ourt erred in failing to declare a mistrial on motion of [] Appellant[] when, after the [c]ourt overruled [] Appellant's objection of hearsay to the introduction an out[-]of[-]court statement of witness Jody Hammer during the Commonwealth's examination of Detective Bran[d]dan Hallowich, Jody Hammer was not called as a witness by the Commonwealth[?]

[4.] Whether the [t]rial [c]ourt erred in failing to grant [] Appellant's motion to dismiss, or for judgment of acquittal, when, after the close of the Commonwealth's case, the Commonwealth had failed to offer any evidence for an underlying felony requisite

- 12 -

for the conviction of Murder in the Second Degree (Felony Murder), other than statements of [] Appellant, in violation of the *corpus delicti* rule[?]

[5.] Whether the Commonwealth presented sufficient evidence to prove the elements of the crimes resulting in conviction[?] Appellant contends that the Commonwealth did not present sufficient evidence to prove that he was the actor responsible for the Murder in the Third Degree of [A.E.], and that the Commonwealth did not present sufficient evidence that an underlying felony requisite for a conviction of Murder in the Second Degree was committed.

[6.] Whether the jury's verdict was against the weight of the evidence presented by the Commonwealth at trial as the verdict was not supported by the physical evidence[?]

Appellant's Brief at 10-11.[4]

## A.

In his first issue, Appellant claims that the court improperly allowed the admission of hearsay evidence. *Id.* at 19-26. We review a trial court's evidentiary rulings, including rulings relating to hearsay, for an abuse of discretion. *Commonwealth v. Walter*, 93 A.3d 442, 449 (Pa. 2014).

"Hearsay is an out-of-court statement offered for the truth of the matter asserted. Hearsay generally is inadmissible unless it falls within one of the exceptions to the hearsay rule delineated in the Pennsylvania Rules of Evidence." *Commonwealth v. Rivera*, 238 A.3d 482, 492 (Pa. Super. 2020) (citation omitted). It is well established that when a party introduces an out-of-court statement not for the truth of its substance, but to explain the witness's course of conduct, the statement is not hearsay. ***Commonwealth***

---

[4] The Commonwealth did not file a brief to this court as Appellee.

*v. Rega*, 933 A.2d 997, 1017 (Pa. 2007); ***Commonwealth v. Johnson***, 42 A.3d 1017, 1035 (Pa. 2012).

## I.

Appellant contends that, with respect to the testimony pertaining to Mr. Pumphrey, "after Detective Hallowich testifie[d] to the objectionable statement of Mr. Pumphrey, he d[id] not testify to any next step in the investigation based on that statement. Appellant's Brief at 25. Appellant argues—without citation to any authority—that, because Detective Hallowich merely testified that "eventually" the police confirmed the identity of the individuals mentioned by Mr. Pumphrey, without explaining the investigatory procedures the police used to determine their identities, and the fact that the police confirmed that Appellant was the person referenced by Mr. Pumphrey, demonstrates that the Commonwealth actually offered Detective Hallowich's testimony for the truth of the matter asserted, and it should have been excluded as hearsay. *Id.*

The trial court explained that it overruled Appellant's objection to Detective Hallowich's testimony about his interview with Mr. Pumphrey because the testimony satisfied the "course of conduct" exception to the prohibition against the admission of hearsay. Trial Ct. Op., 9/26/24, at 13. The court found that the Commonwealth did not elicit this testimony to identify Appellant as the person who participated in the murders, but to explain Detective Hallowich's investigation and the steps he took next, including going to the place where Appellant and Ms. Hammer lived. *Id.*

Following our review of the notes of testimony, we conclude that the trial court did not abuse its discretion in overruling Appellant's objection to this testimony. The record reflects that the Commonwealth presented Detective Hallowich's testimony concerning Mr. Pumphrey's statement as "course of conduct" evidence to explain how and why his investigation developed as it did.[5] This claim, thus, fails.

## II.

Appellant next argues the trial court erred in allowing Detective Hallowich to testify regarding the interview with Ms. Hammer and K.M., without instructing the jury that the testimony was admissible for the limited purpose of explaining Detective Hallowich's course of conduct. *Id.* at 26.

In support of his claim that the trial court must provide the jury with a limiting instruction if it rules admissible hearsay testimony satisfying the "course of conduct" exception, Appellant cites *Commonwealth v. Hardy*,

_____

[5] Moreover, Appellant has failed to cite any authority in support of his bald assertion that, because Detective Hallowich's did not explain the investigatory procedures he used to determine the identities of the people that Mr. Pumphrey told him were present at Ms. Pumphrey's home the day before the murders, proves that the Commonwealth offered the testimony for the truth of the matter asserted. *See* Appellant's Brief at 25. It is not the role of this Court to develop an appellant's argument where the brief provides mere cursory legal discussion. *Commonwealth v. Johnson*, 985 A.2d 915, 925 (Pa. 2009). We "will not act as counsel" and "[w]e shall not develop an argument for an appellant, nor shall we scour the record to find evidence to support an argument[.]" *Commonwealth v. Hardy*, 918 A.2d 766, 771 (Pa. Super. 2007); *Milby v. Pote*, 189 A.3d 1065, 1079 (Pa. Super. 2018). Because Appellant did not develop the argument in support of this assertion, we decline to address it.

- 15 -

918 A.2d 766 (Pa. Super. 2007). In **Hardy**, the trial court, without ruling on the appellant's hearsay objection, permitted the investigating detective to testify that medical personnel who examined the victim told the detective that the victim suffered three rib fractures. **Id.** at 777. On appeal, this Court opined that this testimony was arguably "admissible merely to explain [the detective's] course of conduct during the investigation." **Id.** However, because the transcript did not make clear whether the court was admitting this evidence for that limited purpose, this Court regarded it as hearsay. **Id.** This Court, nonetheless, found its admission harmless because it "was cumulative of the untainted, properly admitted[,] and substantially similar testimony which the doctor provided." **Id.**

We find Appellant's reliance on **Hardy** misplaced as, contrary to Appellant's assertion, the **Hardy** Court, did not impose any requirement on the trial court to provide a limiting instruction to the jury when admitting testimony that might otherwise be hearsay under the "course of conduct" exception.

Furthermore, as the trial court explained with respect to Ms. Hammer's statement,

the only testimony provided by Detective Hallowich concerning Ms. Hammer's interview was her explanation as to being with Aaron Butler and [Appellant] on the day of the homicides as they went to Ms. Pumphrey's residence then to Slippery Rock before returning to the residence they were residing at[.] This information led Detective Hallowich to speak with Mr. Butler and to examine cell phone geolocation data in an unsuccessful attempt to confirm their rendition of events. It is apparent that the portion of Ms. Hammer's interview recalled by Detective Hallowich at trial

did not directly implicate [Appellant] in the crimes charged nor did it place him at Ms. Pumphrey's residence when the crimes occurred. Those statements were made solely to explain to the jury the course of Detective Hallowich's investigation and the truth of those statements was immaterial to the outcome of trial.

Trial Ct. Op. at 13-14.

With respect to K.M.'s statement to Detective Hallowich, the trial court explained as follows:

Detective Hallowich testified concerning a forensic interview of K.M. conducted by Jan Wilson at the [CAC]. During that interview, K.M. identified [Appellant] as the person who shot A.E. Immediately after Detective Hallowich recalled that portion of K.M.'s forensic interview, the Commonwealth inquired as to what Detective Hallowich did next. According to Detective Hallowich, they received that information from K.M. and proceeded to interview [Appellant], Mr. Cooper, and Ms. Hammer as they were seeking "stronger evidence" beyond relying on the testimony of a 7-year-old child. K.M. participated in another forensic interview the next day where she identified [Appellant] from a photographic lineup which then resulted in Detective Hallowich and Corporal Buswell placing Appellant in custody. It is obvious that the testimony concerning K.M.'s forensic interview was not provided to prove that [Appellant] was the person who killed A.E. but to demonstrate the steps taken by law enforcement to establish the individuals who perpetrated the homicides. In fact, law enforcement confronted Defendant with a portion of K.M.'s forensic interview during his recorded interview. At trial, the section of [Appellant's] interview containing a replaying of K.M.'s forensic interview was played for the jury without objection by Defendant. Moreover, K.M. testified at [Appellant's] trial and was subject to cross-examination. [Appellant] was granted the opportunity to challenge the veracity and reliability of the forensic interview, if he decided to do so.

*Id.* at 14-15.

Following our review, we conclude that the trial court properly exercised its discretion in finding Detective Hallowich's testimony regarding Ms.

- 17 -

Hammer's and K.M.'s statements satisfied the "course of conduct" exception to the prohibition against the admission of hearsay testimony. In the case of Ms. Hammer, the Commonwealth offered Detective Hallowich's testimony not to implicate Appellant in the murders or to place him at Ms. Pumphrey's residence when the crimes occurred, but only to explain to the jury the course of Detective Hallowich's investigation—the truth of the substance of those statements was immaterial to the outcome of trial.

In the case of K.M., the Commonwealth offered Detective Hallowich's testimony regarding K.M.'s identification of Appellant as A.E.'s shooter to explain that the police sought to obtain evidence stronger than just the statement of a seven-year-old child. Accordingly, we conclude that the trial court did not abuse its discretion in overruling Appellant's hearsay objection to Detective Hallowich's testimony regarding Ms. Hammer and K.M.[6]

**B.**

In his second and third issues, Appellant challenges the trial court's denial of his two motions for a mistrial. We review a trial court's denial of a motion for mistrial for an abuse of discretion. *Commonwealth v. Bryant*, 67 A.3d 716, 728 (Pa. 2013). A mistrial is appropriate "only where the incident upon which the motion is based is of such a nature that its

---

[6] Even if the trial court had erred in overruling Appellant's objection to Detective Hallowich's testimony regarding K.M.'s forensic interview, we would find it harmless as the Commonwealth also showed the jury a recording of the forensic interview without any objection from Appellant and K.M. later testified at trial and was subject to cross-examination about her interview by Appellant.

unavoidable effect is to deprive the defendant of a fair trial by preventing the jury from weighing and rendering a true verdict." *Id.* (citation omitted).

## I.

Appellant first claims that the trial court abused its discretion in denying his motion for a mistrial after K.M. testified that she either did not know or could not remember having identified Appellant as the person who shot A.E. He contends that, because K.M.'s trial testimony was "inconsistent[] with [her] out[-]of[-]court statement testified to by Detective Hallowich, Detective Hallowich's testimony retroactively "became testimonial and not merely for the purpose of furthering the investigation." Appellant's Brief at 27. Appellant asserts that, accordingly, "[t]he jury could only consider [Detective Hallowich's] testimony as out[-]of[-]court statements being offered as to the truth." *Id.* Appellant claims that, "once [K.M.] testified inconsistently with her out[-]of[-]court statement, the [t]rial [c]ourt erred by not offering a curative instruction." *Id.* at 28. The result, Appellant argues, was prejudice to him that should have resulted in a mistrial.

Pa.R.E. 803.1, titled "Exceptions to the Rule Against Hearsay - - Testimony of Declarant Necessary," excludes from the prohibition against the admission of hearsay testimony, *inter alia*, a "prior statement by a declarant-witness identifying a person or thing, made after perceiving the person or thing, provided that the declarant-witness testifies to the making of the prior statement." Pa.R.E. 803.1(2). Where a witness has provided one version of events that is incriminating, and another that is vague, the Commonwealth

must call the witness to testify at trial to provide the defendant with the ability to confront her. **Commonwealth v. Hook**, 528 A.2d 241, 243 (Pa. Super. 1987). "The jury must be allowed to hear both versions, weigh the conflicting evidence[,] and reach its verdict accordingly." **Id.**

The trial court explained that it denied Appellant's motion for a mistrial because it found that Appellant had the opportunity to confront K.M. regarding her inconsistent statement during cross-examination, but did not do so. Trial Ct. Op. at 15-16. The court opined as follows:

> K.M. testified at trial and provided the sequence of events as she currently recalled them. The central difference between her forensic interview and her testimony at trial was her ability to identify [Appellant] as the person who shot A.E. During the forensic interview, K.M. unequivocally stated [Appellant] shot A.E. while at trial she identified [Appellant] as one of two individuals standing at the bottom of the stairs but did not recall who shot A.E. K.M. also testified she made the prior statements to Jan Wilson during her forensic interview and was not disavowing said identifications. This is the exact situation which Pa.R.E. 803.1(2) was created to address.
>
> Moreover, [Appellant] was provided with the opportunity to cross-examine K.M. concerning any alleged inconsistencies between her recorded interview and trial testimony or any inaccuracies in those renditions of events.

**Id.** at 16-17. The court, thus, concluded that Appellant "failed to establish any grounds for which this [c]ourt should have declared a mistrial[.]" **Id.** at 17. We discern no abuse of discretion.

The record reflects that, although K.M.'s trial testimony identifying Appellant as A.E.'s killer was vague and inconsistent with the statement she made to the CAC interviewer, Appellant had the opportunity to cross-examine

- 20 -

K.M. regarding any inconsistencies or inaccuracies. Appellant, however, chose not to do so. In addition, as noted above, any alleged inconsistency between K.M.'s trial testimony and her recorded interview statement implicates the weight of the evidence, and not its admissibility.

Moreover, we observe that Appellant has not offered any case law to support his contentions that: (1) once K.M. testified inconsistently with the statement she gave to the CAC interviewer, Detective Hallowich's testimony regarding her statement retroactively became testimonial hearsay evidence and not evidence offered by the Commonwealth as "course of conduct" testimony; and (2) because K.M.'s trial testimony was inconsistent with the statement she made to Detective Hallowich, the trial court erred by not providing the jury with a cautionary instruction. *See Commonwealth v. Johnson,* 985 A.2d 915, 925 (Pa. 2009) (explaining that it is not the role of this Court to develop an appellant's argument where the brief provides mere cursory legal discussion); *Commonwealth v. Hardy*, 918 A.2d 766, 771 (Pa. Super. 2007) (We "will not act as counsel and will not develop arguments on behalf of an appellant."). Accordingly, Appellant is not entitled to relief on this claim.

## II.

Appellant also asserts that the trial court abused its discretion in denying his motion for a mistrial after the Commonwealth rested its case without calling Ms. Hammer as a witness after "insinuating that she 'might' be called as a witness." Appellant's Brief at 29-30. In support of this contention,

- 21 -

Appellant reiterates his claim that the trial court erred in overruling his hearsay objection to Detective Hallowich's testimony regarding Ms. Hammer's timeline of events and individuals involved. *Id.* at 29. Appellant also contends that the trial court's rationale for denying his motion, as set forth in the court's Rule 1925(a) opinion, demonstrates that the court improperly shifted the burden of proof from the Commonwealth to him. *Id.* at 30.

In addressing this issue, the trial court restated its reasons for overruling Appellant's hearsay objection to Detective Hallowich's testimony and further opined as follows:

> [Detective Hallowich's] testimony was properly admitted to explain the course of [his] investigation regardless of whether Ms. Hammer was called to testify. Furthermore, there is nothing of record to indicate [Appellant] was prevent[ed from issuing] a subpoena for and calling Ms. Hammer to testify at trial, if he wished to question her concerning those statements. Yet, [Appellant] failed to exercise that option and Ms. Hammer did not testify at trial. Thus, [Appellant] is not entitled to a new trial on those grounds.

Trial Ct. Op. at 19.

With respect to Appellant's attempt to challenge the trial court's overruling his objection to Detective Hallowich's testimony, we have addressed this issue, *supra*, and found it meritless. Next, we note that Appellant has not cited to any authority in support of his contention that the trial court abused its discretion in denying his motion for a mistrial simply because the Commonwealth did not present the testimony of Ms. Hammer or that any alleged "burden shifting" would necessitate a mistrial. These

arguments are, therefore, undeveloped and we decline to address them.[7] **See**

**Johnson,** 985 A.2d at 925 (explaining that it is not the role of this Court to

develop an appellant's argument where the brief provides mere cursory legal

discussion); **Hardy**, 918 A.2d at 771 (We "will not act as counsel and will not

develop arguments on behalf of an appellant.").

## C.

In his fourth issue, Appellant asserts that the trial court erred in denying

his motion to dismiss or for judgment of acquittal because a Second-Degree

Murder conviction requires that the Commonwealth establish that Appellant

commit an underlying felony and the only evidence that the Commonwealth

presented of an underlying felony was Appellant's statements to police, which

violates the *corpus delicti* rule.  Appellant's Brief at 31-33.

"A motion for judgment of acquittal challenges the sufficiency of the

evidence to sustain a conviction on a particular charge, and is granted only in

cases in which the Commonwealth has failed to carry its burden regarding that

charge."  **Commonwealth v. Foster**, 33 A.3d 632, 634-35 (Pa. Super. 2011)

(citations omitted).  Therefore, our standard of review is to evaluate the record

---

[7] Moreover, we disagree with Appellant's characterization of the trial court as having inappropriately shifted the burden of proof to him.  Rather, as noted above, the trial court properly exercised its discretion in overruling Appellant's hearsay objection.  Its extemporaneous, post-trial observation regarding Appellant's counsel's trial strategy not to call Ms. Hammer as a witness does not support Appellant's claim that the court shifted the burden of proof to him. Thus, following our review, we find no abuse of discretion in the court denying Appellant's motion for a mistrial.

"in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence." *Commonwealth v. Franklin*, 69 A.3d 719, 722 (Pa. Super. 2013) (quoting *Commonwealth v. Widmer*, 744 A.2d 745, 751 (Pa. 2000)).

The Second-Degree murder statute requires proof that a victim died while a defendant was "engaged as a principal or an accomplice in the perpetration of a felony." 18 Pa.C.S. § 2502(b). The statute defines "perpetration of a felony" as the "act of the defendant in engaging in or being an accomplice in the commission of, or an attempt to commit, or flight after committing, or attempting to commit robbery, rape, or deviate sexual intercourse by force or threat of force, arson, burglary[,] or kidnapping." *Id.* at 2502(d). Here, the Commonwealth asserted that Appellant participated in the underlying felony of robbery.

Appellant argues that the Commonwealth attempted to establish that he committed the underlying felony only through Appellant's own statements in violation of the principle of *corpus delicti*. Since the *corpus delicti rule* involves the admissibility of evidence, we review this argument to determine whether the trial court abused its discretion. *Commonwealth v. Murray*, 174 A.3d 1147, 1154 (Pa. Super. 2017). "An abuse of discretion is not merely an error of judgment, but is rather the overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will, or partiality, as shown by the evidence or the record."

*Commonwealth v. Bullock*, 170 A.3d 1109, 1117 (Pa. Super. 2017) (citation omitted).

Corpus delicti, or the "body of the crime," requires the Commonwealth "to establish that a crime has actually occurred before a confession or admission of the accused connecting [her] to the crime can be admitted." *Murray*, 174 A.3d at 1154 (citation omitted). "This rule is rooted in the hesitancy to convict a person of a crime solely on the basis of that person's statements." *Bullock*, 170 A.3d at 1117 (citation omitted). Application of the *corpus delicti* rule occurs in two phases:

> (1) In the first phase, the court determines whether the Commonwealth has proven the *corpus delicti* of the crimes charged by a preponderance of the evidence. If so, the confession or extrajudicial statement of the defendant is admissible;
>
> (2) In the second phase, the rule requires that the Commonwealth prove the *corpus delicti* to the factfinder's satisfaction beyond a reasonable doubt before the factfinder is permitted to consider the confession or extrajudicial statement in assessing the defendant's innocence or guilt.

*Id.* (citations and internal quotation marks omitted).

In a homicide prosecution, the *corpus delicti* is established through proof that a human being is deceased and the death occurred under circumstances which indicate criminal means or the commission of a felonious act. *Commonwealth v. Drexel*, 503 A.2d 27, 30 (Pa. Super. 1986). "[T]he *corpus delicti* of a felony murder is established in the same way that the *corpus delicti* for any homicide case is established. It is not necessary to prove

independent of the confession, that the death occurred during a felony." ***Commonwealth v. Weeden***, 322 A.2d 343, 348 (Pa. 1974).

Appellant argues that the Commonwealth did not prove that he engaged in the perpetration of the underlying felony of robbery because it offered no proof of the robbery, or of a conspiracy to commit a robbery, prior to entering into evidence Appellant's statements to the police that he committed a robbery. Appellant's Brief at 33. Appellant contends that the only evidence of the commission of a predicate felony were Appellant's statements. He concludes, therefore, that the Commonwealth's evidence was insufficient and violative of the *corpus delicti* rule, and the court erred in not granting his motion for judgment of acquittal. ***Id.*** Appellant's claim fails.

In ***Commonwealth v. Coley***, 504 A.2d 1286, (Pa. Super. 1986), this Court held that, contrary to the claim Appellant asserts in this appeal, it was **not necessary** for the Commonwealth to prove the *corpus delicti* of the underlying felony—here, robbery—before introducing Appellant's inculpatory statement. ***Id.*** at 1290. Rather, "[t]he *corpus delicti* of murder consists of evidence that a human being is dead and that such death took place under circumstances which indicate criminal means or the commission of a felonious act." ***Id.*** (rejecting the appellant's claim that the Commonwealth must convince the jury beyond a reasonable doubt of the *corpus delicti* of both murder and the underlying felony of robbery before considering the appellant's inculpatory statement).

Here, before introducing Appellant's inculpatory statements, the Commonwealth presented uncontradicted testimony, including from Detective Hallowich, that the victims' deaths were caused by criminal acts of violence. Detective Hallowich testified to his direct observations of the deceased status of the victims, the investigatory efforts made to determine the cause of their deaths and, ultimately, provided a thorough description of all evidence found at the crime scene evidencing that murders had occurred. Through Detective Hallowich's testimony, the Commonwealth established that none of the victims had a firearm or any other weapons, indicating their deaths were not the result of a fatal accident or suicide. The Commonwealth also presented photographs of the bodies of the victim, which were marked and entered into evidence. Thus, as in **Coley**, the Commonwealth established the *corpus delicti* of the murders before introducing Appellant's inculpatory statements. The trial court, therefore, did not abuse its discretion in rejecting Appellant's *corpus delicti* argument. Viewing the evidence in the light most favorable to the Commonwealth as verdict-winner, we conclude that Appellant is not entitled to relief on this claim.

**D.**

In his fifth issue, Appellant claims that the Commonwealth failed to present sufficient evidence that: (1) he was the person who murdered A.E. to support his Third-Degree Murder conviction and, (2) that he committed an underlying felony requisite for his conviction of Second-Degree Murder. Appellant's Brief at 34-35.

It is axiomatic that the argument portion of an appellate brief must be developed with citation to the record and relevant authority. Pa.R.A.P 2119(a)-(c). As stated above, "[w]e shall not develop an argument for an appellant, nor shall we scour the record to find evidence to support an argument." *Milby v. Pote*, 189 A.3d 1065, 1079 (Pa. Super. 2018). This Court will address only those issues properly presented and developed in an appellant's brief as required by our rules of appellate procedure. Pa.R.A.P. 2101-2119. As this Court has made clear, we "will not act as counsel and will not develop arguments on behalf of an appellant." *Hardy*, 918 A.2d at 771. "Appellate arguments which fail to adhere to these rules may be considered waived, and arguments which are not appropriately developed are waived." *Coulter v. Ramsden*, 94 A.3d 1080, 1088 (Pa. Super. 2014). *See also Commonwealth v. Kane*, 10 A.3d 327, 331 (Pa. Super. 2010) (citations omitted) (where "defects in a brief impede our ability to conduct meaningful appellate review, we may dismiss the appeal entirely or find certain issues to be waived.").

Appellant's argument in support of his sufficiency of the evidence claim is woefully underdeveloped. Although Appellant has provided citations to boilerplate authority regarding our standard of review, he has failed to discuss the facts of this case in the context of relevant case law, failed to include the text of the statutes whose elements he alleges the Commonwealth did not prove, and has merely incorporated by reference the arguments set forth in other sections of his appellate brief and quoted the argument set forth by trial

counsel in support of his post-sentence motion. His failure to develop the argument in accordance with our Rules of Appellate Procedure has hampered our ability to conduct meaningful appellate review. This issue is, therefore, waived.

**E.**

In his final issue, Appellant challenges the weight of the evidence presented by the Commonwealth at trial, alleging that the verdict was not supported by the physical evidence and was largely based on hearsay. Appellant's Brief at 36.

As with his prior issue, Appellant has failed to develop this issue with citation to and discussion of relevant authority or to the notes of testimony. Rather, he has again merely incorporated by reference arguments set forth in other sections of his appellate brief and quoted his trial counsel's brief submitted in support of Appellant's post-sentence motion. Appellant has, thus, waived this issue for our review.

In sum, having found each of Appellant's issues either meritless or waived, we affirm Appellant's judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 8/27/2025